G.H.C. REID & CO., INC., Plaintiff,

v.

K.M.S.T., K.M.S.T. WHOLESALE, and J.J. YONG, Defendants.

G.H.C. REID & CO., INC., Plaintiff,

v.

PETELO UTI and SO EUN JOO, individually and dba MALAEIMI
VALLEY MARKET, Defendant-Garnishees.

High Court of American Samoa
Trial Division

CA No. 78-89

August 19, 1997

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Jennifer L. Joneson
 For Defendants/Garnishees, Marshall Ashley
 For Defendant, J.J. Yong, Cherie S. Norman

## ORDER ON MOTION FOR RECONSIDERATION

### Introduction

On January 16, 1990, this court entered judgment against defendants K.M.S.T., K.M.S.T. Wholesale, and J.J. Yong ("Yong") (collectively, "Principal Defendants") in favor of Plaintiff G.H.C. Reid & Co., Inc., ("Reid") in the sum of $48,804.11 plus court costs of $50 and interest calculated at 6% per annum.

On December 3, 1996, Reid filed a complaint against Garnishee Defendants Petelo Uti, So Eun Joo (Yong's wife), and Malaeimi Valley Mart requesting a "determin[ation]" that the Garnishee-Defendants give to Reid "money or property" belonging to the Principal Defendants.[1]

On July 1, 1997, after a hearing on the matter, this court relied on equitable principles and the doctrine of fraudulent conveyance and declared that Yong "constructively possesses a 100% interest in MVM,

---

[1] The Court, which has become unfortunately accustomed to shoddy legal work, considered this request as a poorly worded request for declaratory relief. In this jurisdiction, the Trial Court Rules of Civil Procedure have done away with "technical forms of pleading," and pleadings are to be construed liberally so "as to do substantial justice," T.C.R.C.P. 8(e)(1), 8(f). *Morgan v. American Samoa Government*, 24 A.S.R.2d 164, 165 (Trial Div. 1993).

and that MVM's assets are therefore subject to Reid's judgment lien." *G.H.C. Reid & Co., Inc. v. K.M.S.T.*, 1 A.S.R.3d 82, 86 (Trial Div. 1997).

Defendants and Defendant-Garnishees now move for reconsideration of the court's July 1, 1997, decision.

## Discussion

Defendants' and Defendant-Garnishees' arguments can be distilled into two basic propositions: (1) there was no legal basis for declaring that Yong was the true owner of MVM; (2) that Reid's circumstantial evidence was insufficient to satisfy Reid's burden of proof.

■ Defendants and Defendant-Garnishees claim that our decision unlawfully and unfairly deprives Yong's wife of the right to work on her own behalf. *See, e.g., Krebs v. Lay*, 352 P.2d 577 (Or. 1960). Nothing in our original opinion and order suggests that a judgment debtor's spouse may not create his or her own business, even with the judgment debtor's assistance, *where there is no fraudulent intent.* However, a judgment debtor's spouse may not create his or her own business where the business is not actually that of the spouse and is instead only a device to keep from the judgment debtor's creditors the income of the business. *See Schriock v. Schriock*, 128 N.W.2d 852, 865-66 (N.D. 1964).

The instant case is quite different from *Krebs*, where the court found no evidence suggesting that the bank, which had foreclosed on the husband's mortgage and sold the property to the wife, had participated in a scheme to defraud creditors. *Id.* at 582. In the present case, we found circumstantial evidence indicating that Yong's brother knowingly arranged a loan with Yong's wife so that Yong could build a business without encumbrances from judgment creditors.[2] In *Krebs*, no one inquired into the books of the company and "no one testified that income tax returns had been filed that did not reflect the income and expenditures." *Id.* In the present case, we have evidence that Yong has failed to keep accurate records of the company's operations, that he has failed to file tax returns, and that MVM has been secreting compensation to Yong, at least in the form of goods and services. Finally, in *Krebs*, the court found no evidence that the wife was a mere figurehead for the husband. In the case at hand, the evidence indicated that Yong has called all the shots from the beginning. *Id.* Thus, contrary to the

---

[2] *See G.H.C. Reid & Co., Inc. v. K.M.S.T.*, 1 A.S.R.3d 83, 86 (Trial Div. 1997) (Opinion and Order) (wife's inability to speak English or Samoan and lack of business savvy, and fact that Yong, not wife, approached brother about loan suggests that the brother made loan to Yong, not wife).

108

position of Defendants and Defendant-Garnishees, we affirm that this case is not about the spousal right to work, but is about the fusion of equity and the common law doctrine of fraudulent conveyance.

■ Defendants and Defendant-Garnishees argue that "there is no conveyance" that would justify inferring fraudulent conveyance from the court's findings regarding "badges of fraud." *Te`o v. Manuma*, 6 A.S.R.2d 135, 138-40 (Trial Div. 1987). This argument relies on an excessively formalistic and technical approach to this case, an approach that we rejected when we employed the principles of equity. Surely, if the law can invalidate the fraud inherent in transfers from judgment debtors to their spouses, the law should also disapprove fraud in the preceding transactions from conspirator lenders to the judgment debtors. We believe as a matter of equity that a "transferor" in a fraudulent transaction need not actually possess the asset prior to a conveyance or hold legal title to the asset prior to the transfer. *See Te`o*, 6 A.S.R.2d at 138 (transferor merely had "equitable title" in the property before she placed the property in the legal name of her children). Thus, as long as one person has equitable or legal possession of an asset, and somehow vests the asset in the legal possession of another so as to avoid judgment creditors, a fraudulent conveyance has, indeed, occurred.

■ In the present case, the court concluded from the evidence that, regardless of whether Yong personally held in his brother's cash, the loan was made to Yong, not to his wife, and that Yong constructively possessed the money used to start MVM. This startup financing, MVM, and all income from MVM's operations were fraudulently placed in the legal name of Yong's wife solely for the purpose of evading Yong's debts. Equity must serve to extend the application of the doctrine of fraudulent conveyance to the case at hand, rather than to constrain the doctrine's application to technical "transfers" from the transferor's legal coffers.

■ Therefore, we must affirm the legal reasoning in our original opinion and order and refuse to allow form to prevail over substance. We confirm that where a court finds (1) that a lender and borrower conspired to place loan proceeds in the name of a family member, (2) that the loan proceeds were actually used by the borrower--not the family member--to generate income for the borrower, and (3) that the scheme was marked by "badges of fraud" indicating intent to place the borrower's assets and income beyond the reach of other judgment creditors, the court may properly conclude that the loan and its fruits are, as a matter of equity, the property of the borrower and subject to satisfaction of judgments against the borrower.

Defendants and Defendant-Garnishees also criticize the evidentiary foundation for the court's conclusions. They claim that "there is no

109

direct evidence of fraud," as if circumstantial evidence can never justify a court judgment.

 ■ From the very nature of the action, direct proof of the fraudulent intent of the parties is an impossibility. For this reason and because the real intent of the parties and the facts of the transactions are peculiarly within the knowledge of those sought to be charged with the fraud, proof indicative of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties.

*Maguire v. Corbett*, 259 P.2d 507, 510 (Cal. Ct. App. 1953). It appears that defendants and defendant-Garnishees fail to grasp the difference between "no direct evidence" and "no evidence."

 ■ This court found the following relevant to the determination of the case at hand: (1) evidence that the wife could not speak English or Samoan, *see* Trial Transcript at 27 (Testimony of So Eun Joo, "No speak English. No understand. . . . No (understanding of Samoan), just little."), at 33 (Testimony of J.J. Yong, " . . . she cannot work. The Samoan language or English and then don't know the things and then as much as I can do . . . cannot communicate with the people"), at 15 (Testimony of Petelo Uti, stating that she could not understand his inquiries regarding tax filings because of the language barrier); (2) evidence that Yong's wife did not have sufficient business experience to run a store, *see* Trial Transcript at 20 (Testimony of Petelo Uti, "the wife does not know that much about running the business and that is probably the reason for Yong's involvement"); (3) evidence that Yong devised the plan to start up MVM, *see* Trial Transcript at 10 (Testimony of Petelo Uti, averring that Yong, not Joo, approached Uti about forming and operating a retail business), and at 33 (Testimony of J.J. Yong, stating that he, not Joo, approached his brother regarding the capital for MVM); (4) Uti's testimony about his longstanding friendship with Yong, his nominal role in running the business, and his concession that he has received no money from the business during the life of MVM, *see* Trial Transcript at 14-20 (Testimony of Petelo Uti); (5) evidence that Yong ran the business, *see* Trial Transcript at 5 (Testimony of Litia Ioane, stating that Yong was the manager of MVM), at 20 (Testimony of Petelo Uti, "the wife does not know that much about running the business and that is probably the reason for Yong's involvement"), and at 15A (Testimony of Tavita Manu, submitting that Yong acted as the "boss" of MVM); (6) evidence that Yong receives considerable non-cash compensation, a fact that Yong admits in his motion for reconsideration as "true;" (7) evidence that other aspects of MVM's formation and operation were tainted with fraud, *see* Trial Transcript at 11-12, 17 (Testimony of Petelo Uti, admitting that he did not invest $12,000 as the MVM business license application stated, and that MVM did not pay taxes to the American Samoa Government during tax years 1994, 1995, and 1996).

110

From the totality of these circumstances, this court then made a quite reasonable inference that J.J. Yong has attempted to deprive Reid of judgment satisfaction with a sham. Reid satisfied its burden of producing enough evidence to raise a presumption of fraud, but Defendants and Defendant-Garnishees were content to rest on their characterization of issues and to offer only minimal effort at rebutting Reid's evidence. Accordingly, we reject the suggestion from Defendants and Defendant-Garnishees that there is no evidentiary basis for our factual conclusions.

The Defendants'/Defendant-Garnishees' motion for reconsideration is DENIED.

It is so Ordered.

