[S. F. No. 18192.   In Bank.   Oct. 20, 1950.]

ALICE JEAN THORSBY et al., Respondents, v. WILLIS-
TON A. BABCOCK, Appellant.

Phillips, Munck & Niemand for Appellant.

St. Sure & Moore for Respondents.

EDMONDS, J.—Williston A. Babcock is the judgment debtor in an action brought by Carl E. Thorsby and his wife. After the entry of judgment, Babcock sold real property upon which he had placed a homestead. The Thorsbys are endeavoring to obtain the proceeds of the sale in satisfaction of the judgment, and the appeal is from an order determining that the money is not exempt from execution.

The facts are not in dispute. It appears that at the time of the sale, in addition to the Thorsby judgment a writ of attachment had been levied by the Bank of America against the property. The sale was consummated through an escrow and, because of the judgment and attachment, the title company which was acting as escrow holder refused to pay over the proceeds to Babcock.

Babcock then filed suit to quiet title to the fund, claiming the exemption provided by section 1265 of the Civil Code. The Thorsbys, Bank of America and the title company were named as defendants.

Approximately eight months after the property was sold, judgment was entered in favor of Babcock. It was determined that the liens of the Thorsbys and the Bank of America were subject to the homestead filed by Babcock.

Before the decision in the suit to quiet title, but more than six months after the sale of the realty, the Thorsbys levied execution on the money held by the title company. On the day after judgment was rendered in that suit, Babcock demanded from the sheriff the proceeds from the sale upon the ground that they are exempt from execution. The Thorsbys promptly moved for a determination of the validity of the claim for exemption. The court denied exemption.

Babcock contends that the ruling was erroneous because the money represents the amount received from the sale of a valid homestead (Civ. Code, § 1265). He argues that "A creditor should not be permitted, by delaying payment of proceeds to a homestead claimant through litigation for more than six months, to destroy the exemption of such proceeds." Relying upon section 1265 of the Civil Code which exempts the proceeds from sale of a homestead for the period of six months, he reasons that "the time during which he cannot obtain the proceeds because they are under the control of a

court looking into the validity of the exemption should be no part of such period." The respondents assert that "The clear meaning of the homestead statute should not be circumvented by any transaction between the judgment debtor and third parties."

Section 1265 of the Civil Code provides, in part, that ". . . should the homestead be sold by the owner, the proceeds arising from such sale to the extent of the value allowed for a homestead exemption as provided in this title shall be exempt to the owner of the homestead for a period of six months next following such sale." The facts shown by the present record do not bring Babcock within the express terms of this section. ▮ However, the purpose of a law must be considered in determining the legislative intention, and a homestead statute, being of a remedial and humane character, should be given a liberal construction in favor of the exemptions created. (*Greenlee* v. *Greenlee,* 7 Cal.2d 579 [61 P.2d .1157]; *Yager* v. *Yager,* 7 Cal.2d 213 [60 P.2d 422, 106 A.L.R. 664]; *Warner* v. *Warner,* 144 Cal. 615 [78 P. 24].)

By the Constitution, the Legislature is directed to "protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families." (Cal. Const., art. XVII, § 1.) ▮ "The object of all homestead legislation is to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors." (*Estate of Fath,* 132 Cal. 609, 613 [64 P. 995].)

To effectuate the protection of the family unit through a homestead exemption the owner's freedom of disposition is limited (Civ. Code, §§ 1242, 1243; Prob. Code, §§ 1435.1-1435.3, 1435.9) and the use of the property after his death is regulated for the benefit of his family (Civ. Code, § 1265). ▮ "The benign object of the statute was to protect *the home* of the owner from forced sale, and not to withdraw from the reach of creditors property of the debtor as a source of revenue for the support of himself or family." (*Maloney* v. *Hefer,* 75 Cal. 422, 424-425 [17 P. 539, 7 Am.St.Rep. 180].)

However, in addition to exempting "the home," the Legislature has included protection of the proceeds arising from the sale of the homestead by the owner ". . . to the extent of the value allowed for a homestead exemption . . . for a period of six months next following such sale." (Civ. Code,

§ 1265.) The obvious purpose of that exemption is stated in section 1265a which provides: "If the proceeds arising from the sale of the property selected as a homestead are used for the purchase of real property within the period of six months following such sale, the property purchased may be selected as a homestead in the manner provided in this title within the period of six months following such sale, and such selection, when the declaration has been filed for record, shall have the same effect as if it had been created at the time the prior declaration of homestead was filed for record." █ Read together, the two sections allow the owner of the homestead to substitute one family home for another without losing his exemption.

Although most of the states have legislative provisions commonly referred to as homestead laws, only a few of them extend the exemption to the proceeds from a voluntary sale. (E. g., Ill.Stat.Ann. c. 52, § 6; Miss. Code Ann. § 329; Va. Code Ann. § 6546.) In some states the proceeds retain the exemption only if reinvested in other real property to be used as a home. Similarly, statutes relating to proceeds from the forced sale of property subject to a homestead, usually exempt the proceeds to an amount equal to the maximum value permitted to be claimed for homestead purposes. But in many jurisdictions such exemption is allowed only if the proceeds are reinvested in other property within a reasonable or specified period of time. (Mo.Rev.Stat.Ann. § 619; N.J.Rev.Stat. § 2.26-121; and see cases collected in notes, 1 A.L.R. 483; 46 A.L.R. 814; 83 A.L.R. 54.) Statutes not requiring a reinvestment of proceeds from the sale as a condition to their exemption have been severely criticized because, in the absence of such restriction, the debtor may use the proceeds to the detriment of his creditor and without the benefit to his family which the statute was designed to protect. (Haskins, *Homestead Exemptions* [1950] 63 Harv.L.Rev. 1289.)

█ Although, in granting an exemption to the proceeds of a voluntary sale of the homestead for a period of six months (Civ. Code, § 1265), the Legislature has imposed no requirement of reinvestment, obviously the true purpose of giving the owner that time is to permit him to move his family to another home with the retention of protection from forced sale. Statutes not granting such exemption tend to immobilize the debtor to the detriment of his entire family, for whom the homestead provisions were intended to be a benefit.

(See *Gray* v. *Deal,* 50 Okla. 89, 95 [151 P. 205].) In clarification and furtherance of this policy, section 1265a of the Civil Code permits the filing of a declaration of homestead on the newly selected property. If done within six months of the sale of the old home, and with the proceeds from the sale of it, the declaration ". . . shall have the same effect as if it had been created at the time the prior declaration of homestead was filed for record."

Clearly, the Legislature has not required a purchase of other property immediately. Rather it has given the seller the reasonable time of six months within which to complete the transaction. However, the legislative purpose is thwarted if the proceeds from the sale of the homestead cannot be obtained by the owner, through no fault of his own, during the six months' period.

In the present case, Babcock had no control over or use of the money derived from the sale of his homestead until approximately eight months after the sale. During that time it was impossible for him to reinvest in a new home for his family and obtain exemption of it. In effect, he did not have the statutory right to hold the proceeds of the voluntary sale of his homestead for six months, free from levy by his creditors, and the opportunity to have the exemption continue by investing the money in a new home. He was not responsible for the circumstances which prevented him from obtaining the proceeds from the sale of his homestead. Within three weeks after the sale he filed suit to quiet title to the money and there is no suggestion that he, in any way, hindered or delayed the progress of the litigation. However, final determination of the matter required the not unusual time of eight months.

Giving full effect to the purposes of sections 1265 and 1265a of the Civil Code, it would be unreasonable to hold that Babcock should be penalized because litigation required by the escrow holder's refusal to recognize his rights has consumed more than six months. Under the circumstances shown by this record, his homestead rights have not been concluded by this lapse of time.

The order is reversed with directions to the trial court to make an order directing the Sheriff of Contra Costa County to pay to Williston A. Babcock the proceeds from the sale of his homestead property.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.