[Civ. No. 26767. Second Dist., Div. Two. May 20, 1963.]

MAC L. SHERWOOD et al., Plaintiffs and Respondents, v. SYLVIA CORNFIELD, Third Party Claimant and Appellant.

Coleman & Silverstein for Third Party Claimant and Appellant.

A. Perry Insel for Plaintiffs and Respondents.

FOX, P. J.—Plaintiffs, who had been given a money judgment against defendant following trial of a declaratory relief action, caused property to be seized by the Sheriff of Los Angeles County under a writ of execution to satisfy that judgment. Pursuant to sections 519, 549 and 689 of the Code of Civil Procedure, defendant's wife filed claims of ownership by third person with respect to a certain portion of the property. In addition, both she and defendant filed claims of ownership with respect to another portion of the property, *viz.*, two bank accounts listing both of them as "trustees." The husband thus assumed a dual role in the instant case with respect to these two bank accounts, i.e., both defendant and coclaimant. A hearing was held on the third party claims, and an order determining title to property levied upon and claimed by third persons was made, declaring, *inter alia*, that all of the property involved was the property of defendant. The wife, as claimant, moved for a new trial on the question of title to the property. The motion was denied.

A notice of appeal from the order determining title[1] and from the order denying claimant's motion for a new trial[2] was filed by the attorney representing both the defendant and the claimant on behalf of "defendants." There was no notice of appeal filed on behalf of the claimant as such, although she could have appealed from the order. (*Nelson* v. *Superior*

---

[1] The notice of appeal actually purports to appeal from "the judgment in favor of plaintiffs in the Third Party Claim. . . ." There is no such judgment, but the appeal should be treated as an appeal from the order determining title. Such an order is appealable. (Code Civ. Proc., § 689.)

[2] An order denying a motion for a new trial is not an appealable order. The purported appeal therefrom must therefore be dismissed. (*Torres* v. *City of Los Angeles*, 58 Cal.2d 35 [22 Cal.Rptr. 866, 372 P.2d 906].)

*Court,* 14 Cal.App.2d 44 [57 P.2d 1351].) A brief was filed by the claimant wife,[3] but *not* by defendant.

Where an appellant fails to file a brief, the appellate court may treat the appeal as abandoned and an admission that no cause for reversal exists. (*Graham* v. *Los Angeles First National Trust & Savings Bank,* 3 Cal.2d 37 [43 P.2d 543] ; *Estate of Kaemper,* 55 Cal.App.2d 946 [131 P.2d 384].) However, in this case there are several special circumstances which lead the court not to dismiss the appeal but to decide the issues on the merits.

First, the interests of the defendant and the third party claimant are much closer than is true in the usual third party claim case, since they are husband and wife. This is particularly true, of course, with respect to the property for which third party claims were filed jointly by them both.

Secondly, it is quite possible that the appeal was intended to be made by the husband and wife in their roles as third party claimants, since a determination of title to the property in defendant would cause the third party claimants to be more accurately described as ''aggrieved parties'' than the defendant *qua* defendant. This view is borne out by the fact that the notice of appeal was on behalf of ''defendants'' (italics added) ; since there was but one defendant, the use of the plural may well indicate that both the husband and wife intended to appeal, but through inadvertence or mistake in terminology the term ''defendants'' instead of ''third party claimants'' was used. Both *plaintiffs* and claimant title the action on their briefs as ''. . . Sherwood . . . v. *Sylvia* [claimant] Cornfield.'' (Italics added.) Further support is the fact that the brief submitted by the wife is written by the same attorney who represented the husband in his role of defendant as well as claimant.

Finally, the rationale of the rule which allows the court to treat an appeal as abandoned where no brief is filed, is based, *inter alia,* on the fact that the court has no way of determining what the moving party wished to urge as error, and cannot be expected to take up its time to search the record. In the instant appeal, such is not the case. Issues have been raised by the brief of the claimant wife, who calls herself ''appellant,'' and have been answered by the brief of the plaintiffs. This is a proper case to overlook procedural inadvertence and make use instead of the liberality with which

---

[3]Claimant labels her brief ''*Appellant's* Opening Brief.'' (Italics added.)

the court is vested to achieve fairness and determine the case on the merits.

In a proceeding under section 689 of the Code of Civil Procedure to determine title to property claimed by a third party, the third party claimant is in the position of a plaintiff charged with the burden of proof to establish rights that he claims. (*Grant* v. *Segawa*, 44 Cal.App.2d Supp. 945 [112 P.2d 784].) Where a wife claims that property levied on in an action against her husband is her separate property, she has the burden of proof to establish it as her separate property. (*Adler* v. *Blair*, 169 Cal.App.2d 92 [336 P.2d 971].) Since findings of fact are expressly dispensed with by section 689 of the Code of Civil Procedure in proceedings to determine title initiated by a third party claim, review is limited by the rule that all appropriate presumptions and inferences must be indulged in support of the judgment. (*Maguire* v. *Corbett*, 119 Cal.App.2d 244 [259 P.2d 507].)

Claimant centers part of her argument on appeal on a purported "finding," which she claims to be the sole basis of the court's determination of title, quoted by her and set out in the margin.[4] She states that it is not supported by the evidence or by law. Nowhere in the clerk's transcript can we find such a finding *qua* finding; in fact, nowhere are there any findings at all regarding the third party claim and determination of title, since findings of fact are expressly dispensed with in such a proceeding by section 689 of the Code of Civil Procedure. The language quoted by claimant does appear in the trial court's order determining title, but we can find no language there to support claimant's claim that such asserted "finding" was "the basis" for the order. The error of claimant's position is made more apparent when it is considered that the trial court could not possibly have intended the alleged "finding" concerning only transfers to bank accounts to be the sole basis of his determination of the title to an antique Florentine set of daggers, a pair of brass figurines, an antique Wedgewood hatpin holder, and an antique Wedgewood biscuit barrel—four of eighteen different sets of bric-a-brac included by claimant in her third party claims. Since no specific findings were made, and the

---

[4]"...the transfer of funds into the various bank accounts was a subterfuge on the part of the third party claimants and Defendant-Judgment Debtor to avoid payment of the obligations of the Judgment Debtor and that the properties levied upon were and are the property of the Judgment Debtor."

quoted statement can in no way be considered exhaustive of findings which the court would have made had they not been dispensed with by law, our task is to determine, from the record, whether there is a substantial basis to support the trial court's determination. Inasmuch as the order went against claimant, a mere failure to sustain her burden of proof would be sufficient. Likewise, by the *Maguire* rule, *supra*, it is sufficient to state, in order to affirm, that the trial court simply did not believe claimant's evidence. The trial court was entitled to take into consideration the fact that claimant was obviously interested in the outcome of the case in passing on her credibility and the weight to be given her testimony. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521]; *People* v. *Murrie*, 168 Cal.App.2d 770, 774 [336 P.2d 559]; *Tidlund* v. *Seven Up Bottling Co.*, 154 Cal.App.2d 663, 666-667 [316 P.2d 656].) With respect to the court's evaluation of her husband's testimony, we do not have to conjecture; after ruling that the defendant was owner of the property in question, the trial court informed the attorney for the third party claimant (and defendant), ''I think there was subterfuge here, and I may say it is mainly based on the doctor's [i.e. defendant's] untruthfulness on the stand.''

Consideration must be given, of course, to presumptions raised by law. With these rules in mind, we shall examine the various kinds of property involved by separate classifications. Before this can be done, however, we must first treat claimant's argument that much of the property represents proceeds of a loan on the Cornfields' residence and is therefore protected by the ''homestead exemption'' provided for in section 1260 of the Civil Code.

With certain exceptions not here material, ''. . . the dwelling house in which the [person claiming the homestead exemption] . . . resides, together with outbuildings, and the land on which the same are situated . . .'' (Civ. Code, § 1237) are ''. . . exempt from execution or forced sale . . .'' (Civ. Code, § 1240) to an amount of ''. . . twelve thousand five hundred dollars ($12,500) in actual cash value, over and above all liens and encumbrances on the property at the time of any levy of execution thereon'' (Civ. Code, § 1260), where the person claiming the homestead is the ''head of a family.'' (*Id.*) Certain formal procedures must have been followed by the person claiming the exemption; there is no claim by respondents that such was not the case with respect to the Corn-

fields' residence. The argument of the respondents, rather, is simply that the proceeds of a loan on homestead property are not exempt from execution. With this view we are disposed to agree.

According to the testimony of the defendant, he originally purchased the home in question in 1952 for $18,950, later adding $10,000 worth of improvements. He stated that during the next ten years, it appreciated in value by about $3,000 (in addition to the value of the improvements), so that by 1962 the actual value of the property was, by his testimony, "at least, yes, $32,000 or $33,000."

Prior to obtaining the loan on the home, the proceeds of which claimant urges to be exempt, there was already an encumbrance on the house of $13,000. By simple arithmetic, defendant had an equity of approximately $20,000;[5] subtracting the homestead exemption leaves approximately $7,500 upon which creditors could levy. Defendant obtained a second loan of $13,000, leaving an equity in the house of approximately $7,000 all of which is exempt under the "homestead exemption" provisions of the Civil Code. Claimant apparently would have this court hold that the proceeds of the refinancing (or at least all but $500 of them) are *also* exempt. At most, the exemption would extend to the difference between the maximum amount of the homestead exemption ($12,500) and the equity remaining in the property ($7,000), a difference of approximately $5,500. But, we think that the "homestead exemption" was never intended to put a protective blanket over funds which could be traced back to the residence of the person claiming the protection. The applicable provisions of the Civil Code specifically and expressly provide that the "dwelling house . . . ," etc., is exempt from execution or forced sale; there is no reference whatever to the proceeds of a loan on the dwelling house. In fact, section 1260 of the Civil Code specifically provides that the exemption amount is limited to the value of $12,500 ". . . over and above all liens and encumbrances on the property at the time of any levy of execution thereon." Since the benign object of homestead statutes is to protect the *home* of the owner from forced sale and not to withdraw from the reach of creditors property of the debtor as a source of revenue for support of himself or family (*Thorsby* v. *Babcock*, 36 Cal.2d 202 [222 P.2d 863]), it seems quite clear that the

[5]Using the figure of $33,000 for most recent value.

proceeds of the Cornfields' second loan on their home, now resting in various bank accounts, are not covered by the homestead exemption.

Claimant also argues, in connection with the homestead exemption, that because of the exemption, transfer of the proceeds to bank accounts cannot be fraud on the plaintiffs. This argument requires two assumptions: (1) the proceeds are protected by the homestead exemption; and (2) the proceeds are not the property of the defendant. It has been shown that the first assumption is erroneous; inasmuch as it will be shown that the second assumption is also in error, the fraud-on-creditors theory need not be discussed.

We shall now consider the various properties involved.

### Savings Account in Wife's Name

On October 22, 1960, more than $6,000 was deposited in a savings account which the wife had previously maintained in her own name. The funds were made up entirely of proceeds from the loan.

 The home and land were acquired during the marriage and title was taken in the names of husband and wife. The homestead exemption documents also list both the husband and wife. The presumption of community property applies (*Wilson* v. *Wilson,* 76 Cal.App.2d 119, 126 [172 P.2d 568]), and of course the proceeds of community property are community property. (4 Witkin, Summary of Cal. Law, Community Property, § 3(b). There is no claim that improvements made on the home were paid for with other than community property. Claimant argues that the evidence shows that the husband intended to make a gift of the $6,000 to her. She forgets, however, that it is not the function of this court to reweigh the evidence. Intent to make a gift is a question of fact; the trial court heard and saw claimant's witnesses and was in the best position to evaluate their testimony. Not only was he entitled to disbelieve them, but in this particular case must have drawn the reasonable inference from the testimony of the defendant that he did not intend to make a present gift, but only a conditional one which was to take effect in the future. Defendant testified that his wife was to "... have it [the money] available..." if "something drastic happened." The trial court summarized defendant's testimony in this regard and pointed out, "He [defendant] said if he is alive, he had disability insurance, and if he died, then it [the money in the savings account] was to tide her over." The trial court's determina-

tion of title in defendant is entirely consistent with an implied finding that no gift of otherwise community property had been effected or proved by claimant.

## "Totten Trust" Accounts

■ On October 21, 1960, $4,000 was deposited in two savings accounts at Security-First National Bank, one each for James and Randolph Cornfield, with the money divided evenly between each account. The bank book listed the parents (defendant husband and claimant wife) as "trustees" for the respective minor sons. Much is made by both the briefs on appeal of the legal effect of creating such a bank account, known as a "Totten Trust." It is not necessary to reach this question, however, since what is involved here is whether there was anything done to change the character of the $4,000—part of the proceeds of the loan on the home —from community property to property not reachable by plaintiffs herein. Of course, merely titling bank accounts into which the money was placed in a manner superficially inconsistent with its character is, without more, a nullity. Again, the trial judge was entitled to disbelieve the claim of claimants that there was a valid and effective intent to make gifts to the two minor children. It is particularly understandable that the trial judge would disbelieve defendant's claim in this case, since in a deposition taken on February 14, 1962, he testified under oath that, *inter alia*, there were no savings or savings and loan or other bank accounts in the names of either of his two minor children; he also denied that there were any savings accounts in either his own or his wife's name or in the names of both of them. Both these statements were contradicted by later testimony of defendant.

## Bric-A-Brac

■ ■ Claimant listed 18 pieces or sets of art objects, bric-a-brac and antiques as her separate property. The only significant testimony regarding their origin was offered by the wife. She testified that she purchased most of the antiques out of "household money." Property so purchased is community property. (*Grolemund* v. *Cafferata,* 17 Cal.2d 679 [111 P.2d 641].) She admitted the pieces were insured in the names of both herself and her husband. The trial court must have concluded that her testimony failed to prove that they were her separate property. Since she had the burden of

proof, we cannot disturb the court's order, since it is consistent with such an implied finding.[6]

The purported appeal from the order denying the motion for a new trial is dismissed. The order determining title is affirmed.

Ashburn, J., and Herndon, J., concurred.

_____

[6]Neither party raises the question on appeal of whether property which was presumptively community property was nevertheless property determined to be owned by defendant only. Inasmuch as both the husband's separate property and community property are equally liable for the debts of the husband, contracted either for the benefit of the community or for the benefit of himself, the question is irrelevant and properly not raised. (See e.g., *Grolemund* v. *Cafferata,* 17 Cal.2d 679, 688 [111 P.2d 641].)