MARGARET M. MANN, JUDGE
This decision explores whether California law protects the homestead proceeds received by Debtor Douglas W. Sain ("Douglas") from his Chapter 7 Trustee Richard M. Kipperman ("Trustee"). At all relevant times, Douglas has lived at 11118 Mesa Top Place, San Diego, CA 92121 ("Mesa Top"), which Douglas bought back from Trustee during his bankruptcy case. Although Douglas made substantial contributions to finance the sale from personal assets that were not property of the estate, his father, Robert W. Sain ("Robert"),[2] actually took title to facilitate obtaining *327 a loan for the purchase. Douglas retained lease/option rights, however. All told, Douglas invested at least $90,635.43 in Mesa Top, including paying $50,000 in attorneys' fees incurred to buy his interest and defend his homestead rights.
Over a year after the sale escrow closed, Trustee brought a motion for turnover of the $75,000 in homestead proceeds Douglas received from the sale. Trustee claimed Douglas was not entitled to the proceeds since he did not acquire fee title in Mesa Top and did not reinvest the proceeds in a new homestead after receipt. By involving both a lease and a debtor's repurchase of a home from a trustee, this case is outside the standard scenario of a Chapter 7 trustee sale of a homestead to a third party. No case was found, and none was cited to the court, addressing the facts present here, so the issues are of first impression. Because both the policy of preventing homelessness, and the policy of treating creditors fairly, are respected by permitting Douglas to retain his homestead proceeds, Trustee's motion will be denied.
I. Background
While application of the legal principles at issue is disputed, the facts are not. Douglas filed a voluntary Chapter 7 petition on December 13, 2014. He scheduled a 36% interest in Mesa Top, where he resided with his children,[3] which he valued at $260,000. The only business entity in which he scheduled an interest was Sain Communications, Inc., which Douglas solely owned and valued at $0. Douglas claimed a $75,000 automatic homestead exemption in Mesa Top under Cal. Code Civ. Proc. ("CCP") § 704.720, even though he also held a recorded declaration of homestead that was potentially available under CCP § 704.950. Douglas also claimed as exempt a Charles Schwab & Co., Inc. individual retirement account ("IRA") holding $357,513. Douglas's exemptions are no longer subject to objection as the 30-day objection period has passed. Taylor v. Freeland & Kronz, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (even invalid exemption claims cannot be challenged after expiration of the 30-day deadline).
Both Douglas's and his ex-wife's interests in Mesa Top were sold by Trustee to Douglas for $755,000 when Douglas was the highest bidder at a contested auction conducted on May 5, 2016. At the auction, Douglas paid an $11,000 deposit required under the sale contract through a new wholly-owned subchapter S corporation, Sain Entertainment Corporation ("SEC"). Douglas had attempted to credit bid his $75,000 homestead exemption as part of his offer of purchase, but Trustee refused.
Douglas had initially expected Robert would liquidate investments to enable Douglas to buy Mesa Top outright. But, after Douglas was deemed to be the highest bidder, Robert decided instead to fund a loan for the purchase. This change in plans required Robert to take title himself, so Douglas requested Trustee consent to assign the purchase contract to Robert. While Trustee initially refused, this dispute was eventually resolved when Douglas agreed to provide additional deposits and assurances to the estate in return for Trustee's consent to the assignment. Douglas then liquidated $22,500 from his IRA on July 13, 2016, which he also contributed towards the purchase of Mesa Top.
*328 Since Douglas's purpose in buying Mesa Top was to continue to live there with his family, Douglas entered into a month-to-month lease with Robert a few days before escrow closed on July 10, 2016 ("Lease"). Douglas was responsible under the Lease for maintaining the landscaping and paying its expenses, including property taxes, homeowners association ("HOA") fees, and homeowners insurance. The Lease also provided Douglas the option to purchase the home at any time at Robert's "full cost." Escrow closed on the sale on July 15, 2016, generating $217,460.43 in proceeds for Trustee. Douglas then paid Robert the $2,016 in monthly rent due under the Lease from his IRA.
Instead of paying Douglas his $75,000 in homestead proceeds at the close of escrow, Trustee withheld the entire amount and sought to pay $42,496.37 to Douglas's ex-wife to satisfy a domestic support obligation. Douglas objected, and the court ordered Trustee after a hearing to pay Douglas the full proceeds since the money was not property of the estate under Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 764 F.3d 1168, 1176-77 (9th Cir. 2014). Trustee finally paid $75,000 to Douglas on December 29, 2016, by transferring the funds to Douglas's counsel's client trust account. Douglas's attorney then received $50,000 of this money to pay the $65,135.30 in attorneys' fees Douglas incurred buying Mesa Top and defending the homestead. This left Douglas unable to repay his father's investment in Mesa Top as originally intended. While Douglas did not trace the remaining $25,000 to any particular expenditure, he claimed to have paid rent to Robert, and SEC specifically paid $4,719.04 of property taxes incurred regarding Mesa Top on February 24, 2017, and a $400.39 HOA bill on June 15, 2017.
Almost ten months after Douglas finally received his homestead, Trustee brought a motion for turnover of the proceeds. Trustee argued: "Douglas did not acquire a new home, dwelling or homestead," but only a leasehold and failed to reinvest the proceeds after receipt as required by CCP § 704.720(b) and Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012). Douglas opposed the turnover motion, primarily on legal grounds, relying upon his recorded homestead. After the court provided tentative rulings on certain issues, and afforded Trustee an opportunity to investigate the facts, Douglas provided unrefuted evidence of investments in Mesa Top totaling $90,635.43. Because this total exceeded the $75,000 subject to the turnover motion, the court determined further factual development of the record was unnecessary. It then took the matter under submission.
Having further considered the issues, the court makes its findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 in this Memorandum Decision.
II. Analysis
A. Douglas Can Only Assert an Automatic Homestead
California provides two alternative homestead options for its citizens: an automatic homestead exemption set forth in CCP §§ 704.710 - 704.850 and a declared homestead set forth in CCP §§ 704.910 - 704.995. While Douglas's scheduled exemptions asserted only an automatic homestead, he tried to defend the turnover motion relying instead upon his recorded declaration of homestead. His apparent goal was to avoid the obligation to trace the automatic homestead proceeds imposed on the debtors in Jacobson, 676 F.3d at 1199 (debtors' homestead rights arising from an automatic homestead on the petition date are contingent on a "reinvestment" of the proceeds of the sale "in *329 a new homestead within six months of receipt").
The court need not assess whether the reinvestment obligations differ under the automatic and declared homestead schemes here. Not only did Douglas fail to elect a declared homestead exemption in his schedules, declared homesteads are not applicable to a sale by a bankruptcy trustee. Kelley v. Locke (In re Kelley), 300 B.R. 11, 21 (9th Cir. BAP 2003) (declared homestead rights benefit debtors only in the context of a voluntary sale and do not provide debtors with a residential exemption in a sale by a bankruptcy trustee). Douglas cannot avoid the reinvestment test articulated in Jacobson, 676 F.3d at 1199, by relying upon his declared homestead since only the automatic homestead is available to him.
B. The Leasehold Is an Exempt Homestead
Trustee contends Douglas's leasehold interest cannot be a homestead under California law. This was, until recently, more of an unresolved issue in this Circuit. Bencomo v. Avery (In re Bencomo), No. CC 15-1442-DKuF, 2016 WL 4203918, at *7, 2016 Bankr. LEXIS 2901, at *21 (9th Cir. BAP Aug. 8, 2016) (recognizing the absence of controlling law on whether the California exemption statutes consider a leasehold a "homestead" and whether the payment of rent is a "reinvestment"). But this past month, the Ninth Circuit rejected an argument "that title to the property is necessary to claim a homestead exemption." Phillips v. Gilman (In re Gilman), 887 F.3d 956, 965 (9th Cir. 2018). In that case, a debtor who had contracted to sell property before filing bankruptcy, and only held title in trust on the petition date rather than fee title, was nevertheless permitted to claim a homestead exemption if he could demonstrate an intention to continue to live there. Id. at 965-66. That Douglas did not acquire full fee title from Trustee, but only a leasehold interest, similarly does not defeat his homestead rights.
The court is also guided by other Ninth Circuit authority extending Oregon homestead law specifically to leasehold interests. Sticka v. Casserino (In re Casserino), 379 F.3d 1069, 1072-73 (9th Cir. 2004), interpreted Oregon law to hold that a debtor's prepaid rent and security deposit for a residential lease with an option to purchase, qualified for homestead exemption protection under Oregon law. Casserino looked to the purpose of the Oregon homestead statute: to "assure to the unfortunate debtor ... the shelter and influence of home," and the "liberal and humane rules of interpretation" applied to the "statutory text." Id. at 1072 (citation omitted). Since the leased premises were indisputably the debtor's "actual abode," and a fee title ownership interest was unnecessary owner if the debtor had a "present right of possession," Casserino concluded from these rules of construction that a leasehold interest was afforded protection as a homestead. Id.
The California homestead exemption statute is very similar to the Oregon law analyzed in Casserino, 379 F.3d at 1072, and comparing the two statutes leads to the same conclusion; that a leasehold interest must be considered a homestead. Like the law in Oregon, the form of ownership is not the focus of California's statute. Gilman , 887 F.3d at 964. Instead, the focus is on any type of ownership which allows the debtor to reside in property. CCP § 704.710(c) defines a "homestead" as a "principal dwelling ... in which [a] debtor ... resided continuously ... until the date of the court determination that the dwelling is a homestead."
*330 There is no dispute that Douglas has at all times pertinent to this case had an ownership interest and also resided in Mesa Top, so the only question is whether Mesa Top can be considered Douglas's "dwelling." A dwelling is defined in CCP § 704.710(a) as:
[A] place where a person resides and may include but is not limited to the following:
(1) A house together with the outbuildings and the land upon which they are situated.
(2) A mobilehome together with the outbuildings and the land upon which they are situated.
(3) A boat or other waterborne vessel.
(4) A condominium, as defined in Section 783 of the Civil Code.
(5) A planned development, as defined in Section 11003 of the Business and Professions Code.
(6) A stock cooperative, as defined in Section 11003.2 of the Business and Professions Code.
(7) A community apartment project, as defined in Section 11004 of the Business and Professions Code.
This statutory definition was expressly intended to include "any [ ] property in which the judgment debtor ... resides." Hastings v. Holmes (In re Hastings), 185 B.R. 811, 814 (9th Cir. BAP 1995) (quoting legislative committee comment to CCP § 704.710(a) ). The examples provided by the statutory language illustrate this point by including both real and personal property, i.e. boats and mobilehomes. CCP § 704.710(a)(2) and (3).
Even though a leasehold is not expressly listed as an example of a "dwelling" under CCP § 704.710(a), that conclusion is undeniable from other statutory provisions, which specifically address how a leasehold is to be handled under the homestead law. See CCP § 704.820 (permitting executing creditors to sell "the interest of the judgment debtor" and not "the dwelling" where the debtor owns a "leasehold or other interest less than a fee interest"); CCP § 704.740 (executing creditors need not obtain a court order to sell a debtor's dwelling if it is a "leasehold estate with an unexpired term of less than two years at the time levy"). The court must give the statute a holistic interpretation. People v. Gonzales, 2 Cal. 5th 858, 868, 216 Cal.Rptr.3d 285, 392 P.3d 437 (2017) (statutory construction requires that a statute be read "as a whole"); see also Jacobson, 676 F.3d at 1199 ("[l]t is the entire state law applicable on the filing date that is determinative of whether an exemption applies.") (citation omitted). Because these terms implement the definition of a dwelling in the context of a leasehold, the court concludes a leasehold must be considered a dwelling.
Even if the inclusion of leasehold interests within the definition of a dwelling was less evident from the statutory language, the purpose of California homestead law would dictate the same outcome. That purpose is "to ensure that insolvent debtors and their families" are not "rendered homeless." Webb v. Trippet, 235 Cal. App. 3d 647, 650, 286 Cal.Rptr. 742 (1991) (explaining the broad interpretation of the residence requirement for declared homestead exemptions); Jacobson, 676 F.3d at 1200. The importance of this statutory goal is in fact enshrined in the California constitution. Cal. Const., art. XX, § 1.5 ("The Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families."). Like the Oregon statute, California rules of interpretation for the homestead exemption statutes are also liberally construed. Gilman, 887 F.3d at 964 *331 ("Courts liberally construe the 'the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor.' ") (citation omitted); Lee v. Brown, 18 Cal. 3d 110, 113, 132 Cal.Rptr. 649, 553 P.2d 1121 (1976) (citations omitted) (same). Because the definition of dwelling must be liberally construed to protect debtors from homelessness, the court must interpret "dwelling" as including leasehold interests that provide debtors an ownership interest in property that allows them to reside in their chosen home.
Douglas's ownership interests and residency in Mesa Top render it his dwelling, and the money Douglas reinvested in Mesa Top must be considered money he reinvested in an exempt homestead.
C. Douglas Reinvested More than $75,000 in Mesa Top
Trustee also contends Douglas cannot prove he satisfied the requirements of CCP § 704.720(b) by reinvesting the proceeds in a new home within six months after receipt. Trustee misallocates the burden of proof because it is he who has "the burden of proving the estate is entitled to a turnover." Jacobson , 676 F.3d at 1200. Douglas supported with documentary evidence a total of $90,635.43 in investments in Mesa Top, including: 1) $11,000 from SEC deposited into escrow in May 2016; 2) $22,500 from his exempt IRA deposited into escrow in July 2016; 3) a $2,016 rent payment to Robert in August 2016 from his IRA; 4) $4,719.04 in property taxes in February 2017 and $400.39 in HOA fees in June 2017 paid by SEC; and 5) $50,000 in attorneys' fees. Douglas also averred but provided no documentary support that he paid $34,016.73 in total rent to Robert between July 15, 2016 and November 2017. Whether Trustee could meet his burden of proof to contest these rent payments was determined to not be necessary to this ruling.[4]
Trustee did not challenge these facts other than as to the payment of rent. Instead, he contends these investments do not count as proper reinvestments, for the following reasons: 1) The statutory purpose is not advanced since Douglas would never become homeless due to Robert's support; 2) Douglas failed to buy a new home after escrow closed; preventing the $50,000 in attorneys' fees paid to defend the homestead from being considered a reinvestment in a new home; 3) the $33,500 deposited towards the purchase of Mesa Top and August 2016 rent paid from the IRA predate Douglas's receipt of his homestead proceeds; and 4) the $5,117.43 in property taxes and $400.39 in HOA fees in early 2017 were paid by SEC and are not traceable to the homestead. Trustee does not support these contentions with any authority but Jacobson, 676 F.3d at 1198, which had different facts. The debtor there did not make any investment in a new home at any time, either before or after she received $150,000 from a sheriff's execution sale to a third party. Id. Douglas here bought his home back from Trustee and invested more than the necessary amount in the purchase.
As explained below, each of Trustee's specific contentions against Douglas's retention of his homestead proceeds impermissibly relies upon a strict, rather than a liberal, construction of CCP § 704.720(b). Because court must liberally construe California's homestead law, precise adherence to the statutory requirements has been found in a wide array of circumstances to be unnecessary if the outcome would interfere with the beneficial purpose of the law. See *332 Gilman, 887 F.3d at 964 (the liberal purpose of homestead law potentially protected a debtor who was under contract to sell his home); Thorsby v. Babcock, 36 Cal. 2d 202, 205-06, 222 P.2d 863 (1950) (debtor who was two months late reinvesting in a new homestead due to actions of the foreclosing creditor was excused from technical compliance with the predecessor homestead statute to CCP § 704.720(b), i.e., Cal. Civ. Code § 1265, because of the statutory purpose); In re Gardiner, 332 B.R. 891, 893-95 (Bankr. S.D. Cal. 2005) (due to the need for liberal construction, a debtor who received a workers compensation award that was invested in a home, which was later sold, and then deposited into his ex-wife's attorney trust account could protect the funds either as a workers compensation award or as a homestead); Haaland v. Corporate Management, Inc., 172 B.R. 74, 78 (S.D. Cal. 1989) (bankruptcy court's denial of a homestead exemption in the proceeds of a malpractice claim for attorney negligence resulting in the loss of homestead rights was reversed due to the purpose of the reinvestment statute, which was to protect against loss of the homestead).
The collective message of these cases is to mandate a flexible approach to the statutory guidelines. Thorsby, 36 Cal. 2d at 206, 222 P.2d 863 (statutory purpose cannot be "thwarted"). With this guiding principle in mind, the court addresses Trustee's more granular arguments asserting Douglas failed to properly reinvest his homestead proceeds.
i. Douglas Satisfied the Statutory Purpose by Remaining in His Home
Douglas certainly kept himself, and his visiting children, from becoming homeless by investing at least $90,635.43 in Mesa Top. Trustee's speculation that Robert would always bail Douglas out if he lost his home is not persuasive since it is unsupported by evidence, and Trustee bore the burden of proof here. Jacobson , 676 F.3d at 1200. The statutory goal of California homestead law, "to ensure that insolvent debtors and their families" are not "rendered homeless" is fully satisfied by denying turnover of the proceeds. Webb, 235 Cal. App. 3d at 650, 286 Cal.Rptr. 742.
ii. Douglas's Payment of Attorneys' Fees Is a Proper Investment Since He Did Not Need to Buy Another House
Trustee did not contest that $50,000 was invested by Douglas in attorneys' fees defending his homestead, which were directly traceable to Douglas's receipt of his homestead proceeds from Trustee. Instead, Trustee more obliquely claimed that Douglas could not credit these funds as an investment in a new home by arguing: "Douglas did not acquire a new home, dwelling or homestead," after receipt of the proceeds. But having just bought his existing home back from Trustee, Douglas did not need to buy another one, and nothing in the homestead statutes prevents debtors from buying back their homes from either a bankruptcy trustee or an executing creditor. Gardiner, 332 B.R. at 894 ("The Court cannot read into the statute a restriction that is not there. Presumably if the legislature had intended to place a restriction on a workers' compensation award's exempt status after payment, it would have said so as it did in other exemption statutes."). Discouraging debtors from remaining in their homes would also impose unnecessary burdens on the debtors, when the purpose of the statute is "giving the owner [ ] time [ ] to permit him to move his family to another home with the retention of protection from forced sale ... and not immobilize the *333 debtor to the detriment of his entire family." Thorsby , 36 Cal. 2d at 205, 222 P.2d 863.
Trustee also bears some responsibility for Douglas's predicament here. If Trustee had permitted Douglas to credit bid his homestead as part of the purchase price, Douglas's retention of his home and his investment of his homestead proceeds, would have occurred simultaneously with the close of escrow for the sale. See Ortale v. Mulhern, 58 Cal. App. 3d 861, 864, 130 Cal.Rptr. 277 (1976) ("proceeds" from the sale of a homestead are tied to the close of escrow for the sale). Although Douglas tried to structure the sale with a credit bid, Trustee thwarted these efforts by refusing to consent to this structure, which required Douglas to use exempt funds and post-petition assets. Thorsby , 36 Cal. 2d at 206, 222 P.2d 863 (predecessor reinvestment statute could not be reasonably enforced against an executing creditor who delayed a debtor's receipt of the homestead proceeds and prevented them from timely buying a home); see also In re Widdershoven, 452 F.Supp. 503, 505 (N.D. Cal. 1978) (recognizing reinvestment period provided in the predecessor statute can be equitably tolled). Douglas should be afforded similar leeway in not being required to buy a new home after he received the homestead proceeds.
iii. Douglas's Deposits Before Escrow Closed Were a Proper Investment
Trustee also asserts that the $33,500 total escrow deposits and the undisputed $2,016 August 2016 rent payment that Douglas invested in Mesa Top from non-estate funds before receiving his homestead proceeds cannot satisfy CCP § 704.720(b), which provides that proceeds are exempt for six months "after" they "are actually received by the judgment debtor."
No other case has considered what is, in effect, a pre-investment, rather than a reinvestment, in a homestead. But, as with the other cases with unusual facts, the court cannot ignore the purpose of the reinvestment statute, which is broader than simply preventing homelessness. The courts in Thorsby, 36 Cal. 2d at 205, 222 P.2d 863, and In re Golden, 789 F.2d 698, 700 (9th Cir. 1986), explained debtors could not squander their homestead proceeds because the "exemption was not intended to allow the debtor to withdraw sales proceeds from the reach of creditors unless the proceeds were invested in another homestead." Jacobson, 676 F.3d at 1200, elaborated "if a debtor does not put his proceeds to proper use, they ought to be used to satisfy creditors' claims." Whether Douglas should be given credit for his pre-investment of the proceeds through use of non-estate funds, requires consideration of the interests of creditors as well as the policy of preventing homelessness.
Douglas did not squander his homestead proceeds here. Instead, he invested $55,517.82 in Mesa Top after he received them, and was partially reimbursed for his expenditures of non-estate property ($24,516 from his exempt IRA and $11,000 from his post-petition business). Both facets of the statutory purpose are satisfied here: Douglas was able to stay in his home, and his homestead proceeds were put to a proper use that was not detrimental to creditors.
In fact, if Douglas were required to turn over the homestead proceeds, creditors would receive an impermissible windfall. In Haaland, 172 B.R. at 79, the court declined to interpret the tracing statute in a manner that would "have the inequitable consequence of allowing the appellant's creditors, who would have been prevented from attaching the protected homestead *334 proceeds, to obtain a windfall by receiving the proceeds of the malpractice claim awarded to the appellant as direct compensation for the loss of his homestead." To clarify, had Douglas been permitted to credit bid his homestead rights, the estate would have received the full $755,000 purchase price net of expenses less the homestead proceeds. Since Trustee opposed the credit bid and insisted on cash deposits into escrow, the estate is entitled to no more than the same financial outcome; the net purchase price less the homestead proceeds. If Trustee's turnover motion were to be granted, the estate would be wrongfully supplemented with the non-estate assets that Douglas pre-invested into Mesa Top, which creditors of the estate had no right to access.
In contrast, denying the turnover motion, and permitting Douglas to, in effect, be reimbursed for his use of non-estate assets, leaves the estate in the same financial position as it would have been had Douglas been permitted to credit bid his homestead proceeds; again, the net purchase price less the homestead. This is also the same outcome as if Trustee sold Mesa Top to a third party, and Douglas used his homestead proceeds to buy a different house. And, that Trustee was the party who opposed Debtor's effort to credit bid, is another reason to prevent the windfall. Thorsby , 36 Cal. 2d at 206, 222 P.2d 863.
The court will permit Debtor to be reimbursed for his deposits into escrow as a proper reinvestment in his home.
iv. Douglas's Investment of Funds from SEC Was Proper
Trustee's last contention is that Douglas failed to trace SEC's payments in early 2017 of $5,117.43 in property taxes and $400.39 in HOA fees to the homestead proceeds received. The facts and reasoning of Gardiner, 332 B.R. at 895, persuade the court to reject that argument.
Gardiner , id. at n.3, held that a debtor could protect his worker's compensation award even though it traveled a circuitous route through an investment in the debtor's home, which was then sold, when the proceeds from the sale of the home went into his ex-wife's attorney's trust account, before the debtor received the proceeds of the award back after the divorce. Even though the worker's compensation exemption did not expressly impose a tracing requirement, Gardiner reasoned that California law generally protected exempt assets that were converted into other exempt assets under the tracing statute CCP § 703.080. Id. One example offered of where tracing applied was the statute at issue here, CCP § 704.720. Id. Gardiner overruled the trustee's argument that the worker's compensation proceeds could not be properly traced due to their time residing in the attorney's trust account, because no authority was cited or found either that debtor lost control of the funds or that tracing could not be satisfied. Id. Similarly, there is no dispute that Douglas controls SEC as his wholly-owned company, and no authority was cited or found that the $5,117.43 in property taxes and HOA fees paid by SEC cannot be considered funds reinvested in Douglas's homestead.
Trustee's objection on this ground is also overruled.
III. Conclusion
Trustee is not entitled to the turnover of Douglas's $75,000 homestead proceeds.
IT IS SO ORDERED.

Douglas and his father are referred to by their first names to avoid confusion among the parties. No disrespect is intended.

Debtor had joint custody of his three minor children when he filed bankruptcy. Although Debtor's ex-wife was awarded sole legal custody in January 2018, Debtor has visitation rights with the children.

Since the court chose to decide this matter on the uncontested facts, it did not hold further proceedings on additional rent Douglas may have paid.