IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JASON LOWERY,<br><br>              Appellant,<br><br>         v.<br><br>STATE OF WASHINGTON,<br>LISA HUNTER; and PETER HICKEY,<br>WINDERMERE, escrow agent,<br><br>              Respondent. | No. 83227-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Jason Lowery owed the State damages after committing fraud. In 2019, he received the homestead exemption under Former RCW 6.13.030 (2007) when he sold his home. Almost a year and a half later, the amended statute went into effect increasing the homestead exemption amount. RCW 6.13.030. Lowery filed a complaint requesting declaratory relief for the increased exemption amount in 2021. Lowery appeals the trial court's summary judgment order denying his request. We affirm the trial court.

FACTS

In December 2018,[1] a trial court found Jason Lowery liable for violating the Washington State Medicaid False Claims Act (WAFCA). The court ordered Lowery, together with others involved in the fraud,[2] to pay over two million dollars

---

[1] The April 2019 Amended Findings of Fact and Conclusions of Law in the record were retroactive to the original December 2018 filing.

[2] The defendants were Lowery (including his wife and their marital community),

Citations and pin cites are based on the Westlaw online version of the cited material.

in damages. Lowery appealed the judgment. During the pendency of the appeal, Lowery asked the State to remove the judgment lien against his King County home so he could sell it. The State consented to the sale in exchange for Lowery's concession that sale proceeds would be held in an escrow account until resolution of the appeal. The joint stipulated motion and order (agreement) stated in part:

> The proceeds in the Appeal Escrow Account shall belong to the State, and only the State, until final resolution of the Appeal.
>
> . . .
>
> Upon final resolution of the underlying matter, the Appeal Escrow Agent will be directed to disburse the remaining proceeds to the prevailing party on appeal.

The State was not entitled to all of the proceeds from the sale of Lowery's home, which eventually sold for over one million dollars. The agreement listed several preliminary financial obligations and creditors to be paid prior to the State. In addition to these preliminary payments, the agreement noted that Lowery would immediately receive $125,000—the amount for which he was eligible under Washington's 2019 homestead exemption. RCW 6.13.030 (2007). After the 2019 home sale, Lowery received his homestead exemption. The remaining proceeds, $351,722.78, were placed in an "Appeal Escrow Account."

This court affirmed the judgment against Lowery and the Washington State Supreme Court denied his request for review. State v. Lowery, 15 Wn. App. 2d 129, 475 P.3d 505 (2020), review denied, 197 Wn.2d 1002, 483 P.3d

---

Lowery's former company, Relationships Toward Self-Discovery, Inc. (RTS), and the Estate of Laird Richmond (Richmond was the former owner of RTS).

2

773 (2021). The judgment against Lowery became final on May 12, 2021. The same day, an amended homestead exemption statute went into effect, which entitled individuals to the "county median sale price of a single-family home in the preceding calendar year" if that amount was greater than $125,000.[3] RCW 6.13.030; ENGROSSED SUBSTITUTE S.B. 5408, at 2, 67th Leg., Reg. Sess. (Wash. 2021). In response to the legislature's action, Lowery filed a complaint for declaratory relief in the trial court, arguing that he was entitled to the expanded 2021 homestead exemption from the escrow account.

The State moved for summary judgment, arguing that Lowery was not entitled to any additional funds as he had already received his exemption and he had formally agreed to forfeit the remaining escrow proceeds to the State. Lowery filed a cross-motion for summary judgment. The trial court granted the State's motion for summary judgment and denied Lowery's motion for summary judgment. The trial court concluded:

> Mr. Lowery is not entitled to additional Homestead exemption funds beyond the $125,000 he already received in 2019. The money in the escrow account belongs to the state per the Agreed Order.

On November 15, 2021, the trial court granted the State's motion to disburse to the State the monies that had been held in escrow, but later deposited into the court's registry.[4] Lowery appeals the trial court's summary judgment order.

---

[3] The median sale price of a King County home in the preceding calendar year (2020) was $729,600.

[4] Lowery filed a response to the State's motion for disbursement asking the trial court to stay consideration of that motion pending this appeal. The record is devoid of any ruling in response to Lowery's motion to stay. Lowery does not raise issues on appeal related to that motion. The State does not raise a mootness argument.

DISCUSSION

We review a summary judgment ruling de novo. <u>City of Seattle v. Long</u>, 198 Wn.2d 136, 145, 493 P.3d 94 (2021). Summary judgment is proper where the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

The Washington State Constitution directs the legislature to "protect by law from forced sale a certain portion of the homestead." WASH. CONST. art. XIX, § 1. The Homestead Act, chapter 6.13 RCW, "'implements the policy that each citizen have a home where [the] family may be sheltered and live beyond the reach of financial misfortune.'" <u>Long</u>, 198 Wn.2d at 146 (alteration in original) (quoting <u>In re Dependency of Schermer</u>, 161 Wn.2d 927, 953, 169 P.3d 452 (2007). In addition to protecting a portion of the homestead from a "forced sale," the legislature also elected to protect a portion of a homestead from a voluntary sale. RCW 6.13.070(3). However, the legislature explicitly limited this statutory exemption to a period of one year:

> The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, and proceeds from insurance covering destruction of homestead property held for use in restoring or replacing the homestead property, up to the amount specified in RCW 6.13.030, shall likewise be exempt for one year from receipt, and also such new homestead acquired with such proceeds.

RCW 6.13.070(3).[5]

---

[5] The legislature did not amend the voluntary sale provision of RCW 6.13.070(3) when it increased the homestead exemption in 2021. Compare current RCW 6.13.070(3); ENGROSSED SUBSTITUTE S.B. 5408, at 3, 67th Leg., Reg. Sess. (Wash. 2021) with Former RCW 6.13.070(1) (1987); LAWS of 1987, ch. 442, § 207.

We are asked whether RCW 6.13.070(3) entitles individuals to receive the benefit of legislative increases to the homestead exemption when they already received a full exemption more than a year ago.

Statutory interpretation is a question of law this court reviews de novo. Long, 198 Wn.2d at 147. Our goal in construing a statute is to "'ascertain and carry out the legislature's intent.'" Id. at 148 (quoting Lake v. Woodcreek Homeowners Ass'n., 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)). We must follow the plain meaning of a statute, which is determined from the "ordinary meaning of the language, the context of the statute, related provisions, and the statutory scheme as a whole." Id. at 148 (citing to Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 909, 154 P.3d 882 (2007)).

Lowery argues that RCW 6.13.070(3) exempts the $351,722.78 placed in the escrow account from payment to the State. We disagree.

The plain language of RCW 6.13.070(3) states that the

proceeds of the voluntary sale of the homestead . . . *up to the amount specified in RCW 6.13.030*, shall . . . be exempt for one year from receipt.

(Emphasis added.) In 2019, RCW 6.13.030 limited Lowery's homestead exemption "up to" $125,000. RCW 6.13.030 (2007). No additional money beyond $125,000 was exempt from Lowery's creditors. This included any additional sale proceeds in the appeal escrow account that Lowery agreed belonged to the State. The trial court did not err when it interpreted RCW 6.13.030 to mean that Lowery was ineligible for any additional exemption beyond $125,000.

Lowery next claims that the legislature's 2021 amendment was remedial and retroactive as to his circumstance and he is entitled to the expanded homestead exemption. We disagree.

Generally, statutes are presumed to operate prospectively. Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 223, 173 P.3d 885 (2007) (quoting State v. T.K., 139 Wn.2d 320, 329, 987 P.2d 63 (1999)). Statutes may, however, apply retroactively where the legislature so designates or where the statute is remedial in nature. Am. Disc. Corp. v. Shepherd, 160 Wn.2d 93, 99, 156 P.3d 858 (2007).

Homestead statutes were enacted as a public policy measure to ensure families maintain shelter, not to protect the rights of creditors. Macumber v. Shafer, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). Thus, the Washington State Supreme Court has ruled that these statutes should be "accorded a liberal construction" and legislative increases to the homestead exemption are remedial. Id. at 570. Lowery relies entirely on Macumber for his argument that he is entitled to the expanded exemption.

In Macumber, William Macumber obtained a bank loan. Macumber, 96 Wn.2d at 569. After receipt of the loan, the legislature increased the homestead exemption from $10,000 to $20,000. Id. at 569. Two years later, Macumber filed for bankruptcy, claiming the expanded homestead exemption, rather than the exemption that existed when he entered the contract. Id. The court ruled that the expanded homestead exemption applied retroactively as to any debts incurred prior to the amendment and Macumber was entitled to the expanded exemption of $20,000. Id.

6

Macumber is not applicable to Lowery's case because unlike Lowery, Macumber never received his homestead exemption prior to the statute's amendment. The retroactivity described in Macumber applied to an individual who had not received the full benefit of the exemption.[6]

Lowery's interpretation of RCW 6.13.070(3) would permit anyone who had already received their homestead exemption in years prior to request additional sums each time the legislature enacted subsequent increases. "Commonsense informs our [statutory] analysis, as we avoid absurd results." Seattle Hous. Auth. v. City of Seattle, 3 Wn. App. 2d 532, 538-39, 416 P.3d 1280 (2018) (quoting State v. Alvarado, 164 Wn.2d 556, 562, 192 P.3d 345 (2008)). As the homestead statute existed in 2019, the legislature expressed its intent that the exemption should be $125,000. RCW 6.13.030 (2007). Lowery received the exact amount that the legislature intended at the time he received it.

The State did not force Lowery to sell his home in 2019. He elected to do so but needed the judgment lien lifted. By entering into an agreement with the State that lifted the lien, Lowery was able to sell his home and take receipt of the full homestead exemption as it existed in 2019. Lowery received the benefit of his bargain. He is not entitled to any additional homestead exemption.

---

[6] In his reply brief, Lowery also cites to a California case similar to Macumber, Thorsby v. Babcock, 36 Cal.2d 202, 222 P.2d 863 (1950). Babcock also is distinguishable because, unlike Lowery, petitioner Babcock never received his homestead exemption after the sale of his home. Id. at 203-06 (concluding Babcock was not responsible for circumstances which prevented him from obtaining the proceeds from the sale of his homestead during the state's six month exemption period).

We affirm the trial court's summary judgment order.

_____ Coburn, J.

WE CONCUR:

_____              _____ Mann, J.