[Civ. No. 15419.  First Dist., Div. Two.  July 20, 1953.]

THEODORE MAGUIRE et al., Respondents, v. EDWARD J. CORBETT et al., Defendants; MARILYN CORBETT, Third Party Claimant and Appellant.

W. Frank Butters for Appellant.

Hardy & Carley for Respondents.

GOODELL, J.—This is an appeal from an order in favor of plaintiffs and respondents and against appellant Marilyn Corbett on her third-party claim, and from an order taxing costs.

The action was brought by plaintiffs against Edward J. and Felix K. Corbett and tried before the court sitting without a jury. The record does not contain the pleadings but appellant testified that the action arose out of an accident. Findings were waived and on May 12, 1939, a judgment was entered against both defendants and in favor of Theodore Maguire for $486.91, Rita Maguire for $250, Bert Maguire for $250, Beverly Maguire for $750, and $28.25 costs, a total of $1,765.16. No appeal was taken.

Appellant married Edward J. Corbett in 1940, after the rendition of the judgment.

On April 2, 1949, while Corbett was home from Arabia on a visit the Corbetts bought a Pontiac automobile, the purchase price being paid out of his earnings. At that time the unsatisfied judgment amounted to $2,822.09. The car was registered in the names of ''E. J. Corbett and/or Marilyn Corbett.''

In November, 1949, the judgment creditors moved under section 685, Code of Civil Procedure, for the issuance of execution, and after a hearing in which appellant testified on behalf of her husband, the court on December 5, 1949, made an order directing the issuance of an execution, which recited that ''said judgment remains wholly unsatisfied, that plaintiffs have been unable prior to this time to find any property of the defendants in this state which might be applied to the satisfaction of said judgment, and that there is now in this state property of the defendants subject to execution which may be seized to satisfy said judgment;''

On November 15th, two days before the day set for the hearing of the section 685 proceeding, Marilyn Corbett recorded a declaration of homestead covering the family home, and on December 6th, the day after the order directing execution to issue, she caused the registration of the Pontiac to be changed from the names ''E. J. Corbett and/or Marilyn Corbett'' into her sole name. She held a general power of attorney from her husband dated September 18, 1947, and recorded September 19, 1947.

An appeal was taken by Edward J. Corbett from the order directing execution to issue, the same counsel appearing therein for appellant and respondents as now appear for appellant and respondents. On February 21, 1951, the order was affirmed (*Maguire* v. *Corbett*, 101 Cal.App.2d 314 [225 P.2d 606]).

On January 12, 1951, a 1950 Oldsmobile Sedan was pur-

chased for $2,977.59, at which time the unsatisfied judgment amounted to $3,024.92. At that time Corbett was again home on a visit. In that transaction a credit of $1,600 was allowed on the trade-in of the Pontiac and the balance of $1,377.59 was paid in cash, $1,300 of which admittedly was supplied by Corbett out of his earnings, in currency which he carried on his person.

On June 22, 1951, an execution issued and on July 13, 1951, it was levied on the Oldsmobile in the possession of appellant who, on August 6th, filed a third-party claim asserting her absolute ownership thereof. She alleged that she had purchased it from Bray Motor Company of Redwood City, and had paid $2,977.59 therefor, and that its reasonable value was $2,250. The Oldsmobile was registered in her name. A hearing was set, execution sale stayed, notices given, and after the hearing a minute order was entered "that the automobile in question is the community property of Mr. and Mrs. Corbett and hence is subject to levy by the judgment creditors of Mr. Corbett." A few days later a formal order was entered which determined that the Oldsmobile, registered in the name of Marilyn Corbett, the community property of Edward and Marilyn Corbett, was subject to execution for the satisfaction of the judgment in the action, and ordering its sale. This appeal followed.

Appellant's principal contention is that the evidence is insufficient to sustain the court's determination that the Oldsmobile was community property and hence subject to execution for the husband's debts.

Section 3439.07, Civil Code, provides that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Section 689 expressly dispenses with findings, hence this review "is limited by the rule that all presumptions and inferences applicable must go to the support of the judgment." (*Crofts* v. *Nicolaides,* 25 Cal.App.2d 474 [77 P.2d 882].)

In *Fross* v. *Wotton,* 3 Cal.2d 384, 393 [44 P.2d 350], it is said: "From the very nature of the action direct proof of fraudulent intent of the parties is an impossibility. For this reason and because the real intent of the parties and the facts of the transactions are peculiarly within the knowledge of those sought to be charged with the fraud, proof indicative

of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties. [Citation.]''

It follows that if there are any circumstances from which the court could have drawn the inference that the Oldsmobile had been put into the wife's name for the purpose of defeating execution on the plaintiffs' judgment, the order has to be affirmed.

While it is true that the levy was made on the Oldsmobile which at all times after its purchase stood in Mrs. Corbett's name, still the antecedent facts and circumstances were all before the court, and from them it appears that in the acquisition of the Oldsmobile the Pontiac was part of the consideration, having been traded in at a $1,600 valuation. The situation has to be viewed as a whole, and presumably the trial judge so viewed it. When the first move was made by the judgment creditors and the court ordered execution to issue, appellant at once effected the change of registration of the Pontiac into her own name. The timing of this transfer was significant and must have aroused a serious question in the court's mind as to its bona fides. Appellant then held a general power of attorney from her husband which had been made two years before, and which was broad enough to give her the authority to effect this change in registration. When she exercised that power the transfer was of course the act of her principal, the judgment debtor. This eleventh-hour transfer was made in the face of the order for execution after proceedings in which appellant was a participant, having given testimony therein by affidavit on behalf of her husband (then absent from the United States) in an unsuccessful attempt to prevent the issuance of execution.

. The fact that the Oldsmobile was never registered in any name but appellant's does not destroy or lessen the probative force of the transfer of the Pontiac and the particular time of its transfer. These circumstances alone were sufficient to support an inference that the Pontiac had been put into the wife's name to defeat the impending execution, and that title to the Oldsmobile (which replaced the Pontiac as the family car) had been taken in her name for the same purpose.

Appellant testified that her husband had made a gift to her of the Pontiac at the time of its purchase, to make up for the usual gifts which she had not received because of his extended absences from this country. Further, that she had had possession of it from the time it was purchased, had held the

keys and the pink slip, and had exercised the usual acts of dominion over it from the beginning. Appellant relies on the presumptions of title which flow from these facts, and she relies as well on the fact that her testimony that the Pontiac was given to her stands without contradiction. ■ The presumptions are of course disputable and the burden rests on the person attempting to rebut them (*Estate of Simonini*, 110 Cal.App. 548 [294 P. 24]; *Whitaker* v. *Whitaker*, 137 Cal.App. 396 [30 P.2d 538]; *Sayles* v. *Peters*, 11 Cal.App.2d 401 [54 P.2d 94]; *People* v. *One 1939 La Salle 8 Tour. Sedan*, 45 Cal.App.2d 709 [115 P.2d 39]). ■ Moreover, her testimony, although not contradicted by other testimony, did not have to be taken as true by the court. (*Watwood* v. *Steur*, 89 Cal.App.2d 620, 623-624 [201 P.2d 460], a third-party-claim case, and authorities there cited.)

■ There are other facts from which the court could have concluded that when the Pontiac was acquired and later the Oldsmobile, no gift had been made or intended. When the Pontiac was bought Corbett was home and took part in the transaction; admittedly the whole purchase price came out of his (community) earnings; title was taken in the names of E. J. Corbett and/or Marilyn Corbett, which was consonant with community ownership, although it did not necessarily create a presumption thereof under section 164, Civil Code. If originally title to the Pontiac had been taken in the wife's name a much better argument than that now presented, could have been made in favor of a gift. When in 1951 the Oldsmobile was bought, Corbett was again home and took part in the transaction. That was a little over a year after the order for execution, and an appeal was then pending. Into that purchase went the $1,600 credit from the Pontiac and $1,300 in currency which Corbett again produced from his (community) earnings *which he carried on his person.*

The two automobile transactions cannot be divorced and no trial court could be expected to divorce them on this set of facts.

Nor could the trial court be expected to give too much weight to the disputable presumptions arising from the wife's exclusive possession of the automobiles, since the record shows that her husband was thousands of miles away overseas most of the time and a car was needed to take their daughter to and from school. Whether it stood in the wife's name or in joint names, she would naturally have exclusive possession.

Thus aligned on appellant's side you have her testimony respecting the gift, plus the disputable presumptions of title arising out of exclusive possession and control, while aligned on respondents' side you have the admitted facts that both cars were purchased with, and the product of, the husband's community earnings plus the documentary evidence of the overnight transfer of the Pontiac in the face of the order for execution. These opposing positions presented questions of fact for the trial court alone (*Fross* v. *Wotton*, 3 Cal. 2d 384, 390, *supra*; *Lawler* v. *Solus*, 101 Cal.App.2d 816, 818 [226 P.2d 348]) and they were resolved in respondents' favor on evidence which, in our opinion, was sufficient to sustain the order appealed from.

*Fross* v. *Wotton*, *supra*, holds that in cases such as this the "proof indicative of fraud must come by inference from the circumstances surrounding the transaction, *the relationship and interests of the parties*." (Emphasis added.) At the time of the proceeding under section 685 appellant's husband was many miles away in Arabia; the moving papers were served on appellant, who admitted that she held her husband's general power of attorney, and it would appear that in that proceeding she took his place in resisting the issuance of an execution. What she did after the adverse decision already appears. These facts presented to the trial court a combination of *relationship* (husband and wife plus principal and agent) *and interest*, rarely found in a single record. "Relationship between the parties is . . . of great importance, and when coupled with other circumstances tending to show fraudulent design, may justify an inference of fraud." (12 Cal.Jur., p. 1070.)

We see no reason to discuss other points presented in the briefs respecting insolvency, or respecting other assets which the Corbetts possessed, since it is settled that if the intent of the debtor to hinder or delay creditors is shown, it is not necessary to prove that the debtor was insolvent at the time. (*Fross* v. *Wotton*, *supra*.)

The appeal also challenges the taxation of $90.75 costs against appellant, for the storage of the Oldsmobile during the four months from August 6 to December 5, 1951, while the third-party claim proceeding was pending. Appellant does not question the reasonableness of the charge but does claim that it is not taxable against her.

Section 1032.6, Code of Civil Procedure, provides that "In superior courts . . . the judgment creditor is entitled to the costs and necessary disbursements of proceedings taken by

him in aid of an execution upon any judgment rendered therein.''

The execution issued, and but for the interposition of appellant's third-party claim the car would have been sold to satisfy the judgment against her husband. Her claim brought about the hearing, to which she was entitled. Pending the hearing the car was stored. The third-party claim made the appellant an adversary party to the judgment creditors where, theretofore, only her husband had been such adversary. When she entered the litigation she assumed the burdens of a litigant.

The only question seems to be whether the storage of the car pending the dispute was a reasonable thing to do and within the discretion of the court. Appellant argues that in order to try title to the car its seizure was not necessary. True, but the car was under levy of a court writ. The question really is whether its impounding was unnecessary in view of all the circumstances, and this was a question for the trial judge to decide. It is not practicable for the Legislature to foresee all the various items of costs that arise in litigation, and as said in *Bond* v. *United Railroads,* 20 Cal.App. 124, 129 [128 P. 786], ''Our supreme court has said that 'the allowance or disallowance of items for expense and disbursements incurred upon the trial of the action must be left in nearly every instance to the discretion of the judge where the cause was tried' (*Miller* v. *Highland Ditch Co.,* 91 Cal. 103 [27 P. 536].)''

In *Southern Calif. Collection Co.* v. *Napkie,* 106 Cal.App.2d 565, 572 [235 P.2d 434], cited by the trial judge in his ruling on costs, the court held that ''In a proceeding under section 689 . . . to determine a third party's claim to property seized on execution, the judgment carries costs as a matter of course.'' That case cites *Exchange Nat. Bank* v. *Ransom,* 52 Cal.App.2d 544, 546 [126 P.2d 620], where the third-party claimant prevailed. Under those authorities it follows that had appellant prevailed here, the $90.75 storage bill would have been taxable against respondents. Turn about is fair play.

*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266 [83 P.2d 503], cited by appellant, involving the premium on an attachment bond claimed as costs, is not at all in point. There is no merit to appellant's contentions respecting costs.

The orders appealed from are affirmed.

Nourse, P. J., and Dooling, J., concurred.