[Civ. No. 23213.   Second Dist., Div. Three.   Mar. 3, 1959.]

CATHERINE G. COOPER, Plaintiff and Appellant, v. LAWRENCE J. COOPER, Defendant and Appellant; GEORGE F. STONEMAN et al., Respondents.

A. W. Brunton and Henry V. Goza, Jr., for Appellants.

Title & Tannenbaum and Julius M. Title for Respondents.

VALLÉE, J.—Plaintiff, Catherine G. Cooper, brought this suit to quiet title to an improved parcel of realty, called the Margate Street property. She named as defendants Lawrence J. Cooper, and George F. Stoneman and his wife, Vivian A. Stoneman, among others. Lawrence J. Cooper did not answer the complaint. The Stonemans answered and cross-complained, alleging that: about March 30, 1951, Lawrence J. Cooper became the owner of the property; with intent to hinder, delay, and defraud his creditors, he caused the title to be placed in the name of Catherine G. Cooper; on information and belief, that while Catherine G. Cooper and Lawrence J. Cooper held themselves out as husband and wife, they have never married; on information and belief, the considerations paid for the property were the sole and separate funds of Lawrence J. Cooper; on information and belief, by the purchase of the property Lawrence J. Cooper was rendered insolvent; at the time of the purchase Catherine G. Cooper knew the property was being placed in her name for the purpose of hindering, delaying, and defrauding the creditors of Lawrence J. Cooper.

The cross-complaint further alleged: about September 8, 1954, a judgment was rendered in an action in the Superior Court of the County of Los Angeles in which John F. Phillips was plaintiff and Lawrence, defendant; on October 11, 1955, the property was sold under execution issued in that action to the Stonemans, and they are the owners. The cross-complaint also alleged that since October 11, 1955, the property has been occupied by lessees of Catherine and Lawrence and they have received $85 a month rent.

In her answer to the cross-complaint Catherine denied all its allegations except she admitted she and defendant have never married and are not husband and wife, and that she has received the rents from the property. In his answer to the cross-complaint Lawrence denied any claim of ownership in the property and alleged it was purchased by Catherine with her separate funds; and that he was not then and is not now insolvent.

The trial court found: Lawrence was the sole purchaser and became the sole owner of the property; all of the funds paid toward the purchase were funds belonging to Lawrence in

which Catherine had no right, title, or interest; no funds whatsoever belonging to Catherine have been invested in the property at any time; Catherine did not at any time acquire any interest therein; Catherine and Lawrence received all the rents; they were domiciled in Iowa and have never been domiciled in California; the property was purchased in Catherine's name for the purpose of concealing Lawrence's ownership in the property from his former wife, to whom he was indebted for child support, and Catherine knew it was being placed in her name for that purpose.

The court further found: at the time of the purchase Catherine and Lawrence were and for many years had been living together as husband and wife but had never been and were not husband and wife; Lawrence had previously been married to Lula Bond; that marriage had been dissolved by a decree of divorce in the Superior Court of the County of Los Angeles many years prior to the purchase; in that divorce action Lula Bond had secured a judgment against Lawrence for monthly payments for support of minor children; at the time of the purchase Lawrence owed several thousand dollars on that judgment.

The court further found: in 1954 Lula Bond assigned her right of action on the delinquent judgment to Phillips, who sued Lawrence and recovered a judgment against him for $4,969.16; by virtue of a writ of execution issued on that judgment, all interest of Lawrence in the property was sold to the Stonemans on October 11, 1955, for $5,369.69; the Stonemans are the owners of the property; since October 11, 1955, Catherine and Lawrence have collected $2,035 rent from tenants of the property.

Judgment was that the Stonemans are the owners of the property subject to a deed of trust, and that they recover $2,035 from Catherine and Lawrence. The latter appeal.

Appellants first assert they did not have a fair trial. They say the statement of the trial judge quoted in the margin which was made after he had stated what the findings and judgment were to be "expressed his state of mind throughout the trial and impaired his impartiality and swayed his judgment."[1] We find no basis for the assertion. "It is well

---

[1]The statement was: "THE COURT: I have no evidence before me that would justify any formal action, but I would suggest to Mr. Lawrence J. Cooper that he start living now as he should have started back in 1936, to conduct himself as a Christian gentleman and avoid any future trouble. If he had just behaved himself and taken care of his family as

settled in this state that the expressions of opinion uttered by a judge, in what he conceives to be a discharge of his official duties, are not evidence of bias or prejudice.'' (*Kreling* v. *Superior Court*, 25 Cal.2d 305, 310-311 [153 P.2d 734].)

■ Conviction in the mind of a judge, based on his observation of the witnesses and the hearing of their testimony, does not amount to prejudice against a litigant.

■ Appellants contend the findings that all of the funds paid toward the purchase of the property were funds belonging to Lawrence, that no funds belonging to Catherine had been invested in the property, that the property was owned by Lawrence and not by Catherine, and that the taking of title in the name of Catherine was for the purpose of concealing from Lula Bond the fact that Lawrence was the true owner of the property and to evade the judgment for child support, are contrary to the evidence. They say the evidence without conflict shows that all the money paid on the purchase price of the property was the separate property of Catherine, and that the evidence is conclusive that the property was not purchased and title taken in her name to hinder, delay, or defraud Lawrence's creditors.

The trial judge, at the conclusion of the evidence, stated he did not believe the testimony of appellants. Respondents say the trial judge was entitled to disbelieve their testimony. That is true. But the fact that he disbelieved their testimony does not furnish affirmative evidence supporting the findings. ■ ''Disbelief does not create affirmative evidence to the contrary of that which is discarded. 'The fact that a jury may disbelieve the testimony of a witness who testifies to the negative of an issue does not of itself furnish any evidence in support of the affirmative of that issue, and does not warrant a finding in the affirmative thereof unless there is other evidence in the case to support such affirmative.' '' (*Estate of Bould*, 135 Cal.App.2d 260, 264 [287 P.2d 8, 289 P.2d 15].) The question is: Was there any substantial affirmative evidence which supports the findings? In other words, does the relationship of the parties, together with the other circumstances surrounding and incident to the transactions, constitute evidence which of itself warranted inferences which support the findings?

he should, he wouldn't be in any of this trouble. The same is true of Mrs. Catherine Cooper, if she had lived as she was undoubtedly taught in her childhood days. You will have to take care of any trouble that arises. They are in trouble enough now. If they want more, I suppose they can ask for it.''

Appellants' contention requires them to demonstrate that there is no substantial evidence to support the challenged findings. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) Appellants, however, recite only evidence favorable to them and argue the case as though we were the judges of the weight of the evidence. ■ It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. ■ It is not the province of a reviewing court to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to the appeal. ■ Where an appellant claims that some particular issue of fact is not sustained by the evidence, he is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done the error assigned is deemed waived. (*Tesseyman* v. *Fisher*, 113 Cal.App.2d 404, 407 [248 P.2d 471].) Notwithstanding appellants' disregard of the rules, we have examined the record.

■ In April 1938 Lula Bond, Lawrence's former wife, obtained a judgment against him for child support. It was stipulated that as of November 1, 1950, Lawrence was delinquent in child support payments in the sum of about $4,855 under this judgment.

Lawrence testified he was not married to Catherine. Catherine admitted in her answer to the cross-complaint and testified at the trial that she was not married to Lawrence. They began living together about April 1936.[2] They have been residents of Sioux City, Iowa, since that time. Catherine testified that at that time she had about $10,000 in the form of currency which she had received as a gift from her deceased sister. Her testimony in this respect was not corroborated. She kept the $10,000 in her home until about 1945. About 1947 Catherine and Lawrence opened a joint tenancy account in Security National Bank, Sioux City. On November 22, 1950, an account was opened in Woodbury County Savings Bank, Sioux City, with an initial deposit of $5,000. This account was in the names of Catherine G. Cooper, Marie A. Wright, and Lawrence J. Cooper. Plaintiff could not draw

---

[2]During the trial counsel for appellants sought to amend Lawrence's answer to the cross-complaint to allege a common law marriage. The court denied the motion when counsel stated the issue was immaterial. We note that a common law marriage was valid in Iowa. (*Gammelgaard* v. *Gammelgaard*, 247 Iowa 979 [77 N.W.2d 479]; *In re Stopps*, 244 Iowa 931 [57 N.W.2d 221]; *Love* v. *Love*, 185 Iowa 930 [171 N.W. 257].)

on the account without either the signature of Lawrence or Mrs. Wright. Mrs. Wright was a cousin of Lawrence, and his employee. Catherine testified the money in the Woodbury bank account belonged to her alone but she could offer no explanation why her account should require either of the two other signatures.

In January 1951 Catherine and Lawrence, then residents of Sioux City, Iowa, came to California on a visit; and the following month the property in question, known as the Margate Street property, was purchased through escrow. The deed was to "Catherine G. Cooper, a married woman." The purchase price of the property was $11,325. On February 19, 1951, $500 was deposited in the escrow by a check drawn on the Woodbury bank account. Five thousand, twenty-one dollars and fifty-seven cents of the purchase price was evidenced by a deed of trust to Prudential Insurance Company. The balance of $5,803.43 was deposited in the escrow also by a check drawn on the Woodbury bank account. The deposit receipt and the original escrow instructions covering the purchase named Lawrence as a purchaser. Lawrence signed the instructions as a buyer. On March 27, 1951, Catherine sent a cashier's check for $88.35 to the escrow holder. The escrow was closed on April 4, 1951.

On May 1, 1951, Catherine sent a cashier's check for $500 and on June 1 a money order for $300 to Prudential. At the time Catherine sent the cashier's check and the money order she and Lawrence had two checking accounts. All other installment payments on the deed of trust were made from checking accounts—some from the joint account at the Security bank in Sioux City but the majority from the Woodbury bank account until some time in 1954 when Catherine opened an account in Norwalk, California, and payments were made from that account. The balance unpaid at the time of trial was about $1,500.

The original deposit receipt prepared by the broker, dated February 15, 1951, shows receipt of $500 as a down payment on the property. A carbon copy of the receipt discloses that on the line starting with the words "Received from" the initials "L. J." in "L. J. & C. G. Cooper" were crossed out and the name "Catherine" appears above. Both Catherine's and Lawrence's signatures appear on the lines provided for "Purchaser." A small "x" appears in front of Catherine's signature but no such mark appears in front of Lawrence's signature. The broker, who testified at the trial, was unable to

explain this. He stated he did not put the "x" in front of Catherine's name; that Catherine did not sign the deposit receipt; Lawrence was the only one who signed it; he did not know how Catherine's signature came to be there; and he did not make the correction on the receipt.

On February 19, 1951, the broker caused the escrow officer, Miss Ehlers, to prepare escrow instructions from the information contained on the copy of the deposit receipt. She typed the buyer's instructions showing title to be vested in Catherine and Lawrence as joint tenants and gave the document to the broker to obtain their signatures. A short time later the broker returned with Catherine and advised Miss Ehlers that the two names appearing thereon as joint tenants was incorrect because Catherine was buying the property and it should be in her name only. Miss Ehlers made the correction by crossing out the line reading "Lawrence J. Cooper and Catherine G. Cooper, husband and wife, as joint tenants" and typing below, "Catherine G. Cooper, a married woman." Since the instructions had already been signed by Catherine and Lawrence Miss Ehlers told them they would have to initial the correction. Instead of initialing they signed their names above the correction.

Catherine testified she purchased the property as her future home. On cross-examination she admitted she only went as far as the living room prior to the sale. She also admitted that when she purchased three properties in Iowa she examined the properties carefully inside and out before buying. Lawrence made a complete inspection of the property and discussed details of the purchase with the broker and told him "he was buying." On June 1, 1951, Catherine wrote to Prudential with respect to payments on the deed of trust and stated: "Please mail all future correspondence to the home address and mark Parsonal and address to Mr. & Mrs. L. J. Cooper 1518 Silver Street. Sioux City 17, Iowa." On April 9, 1952, Catherine wrote Prudential enclosing a check and stated: "In February when my husband and I were in L. A. we were in your office and we talked to Mr. Brown, at which time we paid the interest up to February and paid on the contract just leaving a balance of $3,000.00 on the principal. Mr. Brown had promised to send us some type of receipt book with the payments and interest figured on the receipt from February on, as of this date we have never received this book, so would appreciate you continueing on and sending us this booklet of receipts."

Some of the payments to Prudential were made from the joint account of Catherine and Lawrence in the Sioux City Security bank. Some of the rent from the property was deposited in the Woodbury bank account and some in the Sioux City Security bank account, in both of which Lawrence had an interest. In a booklet in evidence Lawrence listed an item of rent from the property together with rents from other properties owned by him, showing a total of the monthly income from all his properties.

In 1954 Catherine and Lawrence became estranged. Catherine filed an action for divorce in Iowa on March 6, 1954, and Lawrence filed one in Nevada. Lawrence testified that in March 1954 he ransacked Catherine's files in Sioux City and took her papers and records, including documents relating to the property in question, and brought them to California where they conveniently disappeared. On March 19, 1954, he conveyed the property to Darle Cooper, his son by his marriage to Lula Bond. On the same day he executed a lease of the property to the Vincents, who took possession. The lease was executed by ''Cooper Washer Parts, Inc., Lawrence J. Cooper, president, and Darle Cooper,'' as lessors. On March 24, 1954, Catherine wrote Prudential enclosing ''a money order for a double payment'' and stated: ''There has been a divorce action between Mr. Cooper & myself, and until further notice I will make the payments,'' referring to the payments on the deed of trust.

Lula Bond assigned the judgment for child support to Phillips, a collection agency. On May 13, 1954, Lawrence entered into an agreement in writing with Lula Bond which in substance provided that the Margate Street property be sold and Mrs. Bond was to receive $4,500 ''in settlement of case, known as, Judgment of child support here in California . . . to satisfy interest and judgment in full,'' $2,000 to be applied on the deed of trust, and the balance to be paid to Lawrence. On May 24 Darle Cooper conveyed the property to Phillips. Phillips sued on the child support judgment and on September 8, 1954, recovered judgment against Lawrence for $4,952.16. Execution issued on the judgment, and on October 11, 1955, the property was sold to cross-complainant G. F. Stoneman. On May 28, 1956, Phillips executed a quitclaim deed to G. F. Stoneman.

The salesman who handled the sale of the property for the seller testified that Lawrence told him he had some money he

wanted to invest in some property for speculation; Lawrence negotiated the price and payment of half the sewer expense; Catherine did not take any part in the negotiations or discussions concerning the property; Catherine stayed in the car while he and Lawrence went to the office (broker's) and prepared the deposit receipt, which was then signed by Lawrence; Lawrence then gave him a check for $500; about that time Lawrence told him he wanted to rent the property and asked him to locate a tenant. Lawrence told Phillips he owned the property.

In his deposition before trial Lawrence testified: no broker had shown him the property; he had never negotiated for it; it had been purchased by Catherine before he ever saw it; he did not know where the funds came from for the purchase; the rents from the tenants of the property were paid directly to Catherine.

Assuming it is true, as appellants argue, that since title to the property was in Catherine it is presumed it is her separate property, the presumption however is rebuttable; and whether it is rebutted is a question of fact for the trial court. (*Stafford* v. *Martinoni*, 192 Cal. 724, 737-738 [221 P. 919]; *Nichols* v. *Mitchell*, 32 Cal.2d 598, 604-607 [197 P.2d 550]; *Tedder* v. *Johnson*, 105 Cal.App.2d 734, 739 [234 P.2d 149]; *Guerin* v. *Guerin*, 152 Cal.App.2d 696, 704 [313 P.2d 902].) Since direct proof of fraudulent intent is often an impossibility because the real intent of the parties and the facts of a fraudulent transaction are peculiarly in the knowledge of those sought to be charged with fraud, proof indicative of fraud may be found in the circumstances surrounding the transaction, the relationship and interest of the parties. (*Taylor* v. *Osborne-Fitzpatrick Fin. Co.*, 57 Cal.App.2d 656, 661 [135 P.2d 598].) The court found that Lawrence was solvent at the time the property was purchased. The fact that Lawrence was not rendered insolvent by the purchase is immaterial if the intent of the debtor to hinder, delay, or defraud a creditor is shown. (*Maguire* v. *Corbett*, 119 Cal.App.2d 244, 251 [259 P.2d 507].) The court was not compelled to accept as true the testimony of Catherine as to the source of the funds used in the purchase of the property. (*Knapp* v. *Elliott*, 81 Cal.App.2d 667, 670 [184 P.2d 934]; *Maguire* v. *Corbett, supra,* 119 Cal.App.2d 244, 250.)

We think it manifest that the evidence we have re-

cited was sufficient to warrant the trial judge in making the findings in question.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied April 2, 1959, and appellants' petition for a hearing by the Supreme Court was denied April 29, 1959.