**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RUDOLPH MEDINA a.k.a. Rudy Medina,<br>　　　　　　　Debtor. | BAP No. SC-19-1299-FSG<br><br>Bk. No. 12-13764-LT7 |
| RONALD E. STADTMUELLER, Chapter 7<br>Trustee,<br>　　　　　　　Appellant,<br>v.<br>JOHN SARKISIAN; BERNADETTE<br>SARKISIAN,<br>　　　　　　　Appellees. | Adv. No. 18-90039-LT<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Laura S. Taylor, Bankruptcy Judge, Presiding

APPEARANCES:

Melissa A. Blackburn Joniaux of Law Offices of William P. Fennell, APLC
argued for appellant; Melisa N. McKellar of Grant & Kessler APC argued
for appellees.

Before: FARIS, SPRAKER, and GAN, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

# INTRODUCTION

Chapter 7[1] trustee Ronald E. Stadtmueller ("Trustee") holds a money judgment. While he was attempting to enforce the judgment, the judgment debtor and his wife entered into an agreement to split their community property in equal shares and "transmute" their interests into separate property. The judgment debtor and his wife then claimed that the Trustee could not enforce the judgment against the wife's "transmuted" separate property. (Under California law, community property is subject to each spouse's debts, but separate property is not subject to the other spouse's separate debts.) If the agreement were effective, the assets available to satisfy the Trustee's judgment would have been cut in half.

The Trustee argued that the transmutation was voidable under the California Uniform Voidable Transactions Act ("UVTA"). The bankruptcy court held that the transmutation agreement between the judgment debtor and his wife constituted a "transfer" under the UVTA. However, it held that the Trustee had to prove actual damages and rejected the Trustee's argument that moving half of the judgment debtor's property out of the Trustee's reach established injury under the UVTA. The court granted summary judgment in favor of the judgment debtor and his wife, and the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Trustee appealed.

The UVTA does not require a plaintiff to prove actual damages. Accordingly, it was error to grant summary judgment in favor of the judgment debtor and his wife. We REVERSE and REMAND.

## FACTUAL BACKGROUND

### A. Mr. Medina's bankruptcy case and ongoing state court litigation

When debtor Rudolph Medina filed a chapter 11 petition, he was litigating a state court lawsuit against John Sarkisian (the "State Court Action"). The bankruptcy court authorized him to retain counsel and continue the State Court Action.

Later, Mr. Medina obtained a partial judgment against Mr. Sarkisian in an approximate net amount of $1.4 million. Mr. Sarkisian appealed.

A few months later, the bankruptcy court converted the case to one under chapter 7 and appointed the Trustee to administer the estate. The Trustee also received court approval to employ counsel and pursue the State Court Action.

### B. The Sarkisians' Transmutation Agreement

While the appeal in the State Court Action was pending, the Trustee conducted a judgment debtor examination of Mr. Sarkisian. He testified that he did not have any pre- or post-marital agreement with his wife.

Less than a month after the judgment debtor examination, and unbeknownst to Mr. Medina or the Trustee, Mr. Sarkisian and his wife

3

entered into an agreement (the "Transmutation Agreement"). The Transmutation Agreement provided that each of the Sarkisians would obtain a fifty percent interest in each item of their community property,[2] and each spouse's share would be converted to separate property. According to the Transmutation Agreement, Mr. Sarkisian's separate assets totaled approximately $3.8 million plus a half-interest in a limited liability corporation and a family trust of undisclosed value. The Transmutation Agreement also listed the couple's obligations in an approximate aggregate amount of $4.1 million.

## C.    The Trustee's adversary proceeding

After the appeal was decided, the state court entered a modified judgment in favor of Mr. Medina for $1,718,271 and in favor of Mr. Sarkisian for $200,000 (the "State Court Judgment"). That judgment is final and no longer appealable.

The Trustee then conducted another judgment debtor examination of Mr. Sarkisian. He learned for the first time that the Sarkisians had executed the Transmutation Agreement.

The Trustee filed an adversary proceeding against the Sarkisians, asserting that Mr. Sarkisian "made the property transfers alleged herein to

---

[2] The division was not exactly equal: Mr. Sarkisian retained a bank account with a $5,000 balance, while Mrs. Sarkisian's separate account contained $30,000. This discrepancy did not affect the bankruptcy court's decision, nor will it affect ours.

Bernadette Sarkisian with the actual intent to hinder, delay, or defraud" the bankruptcy estate with regard to the State Court Judgment. The Trustee sought avoidance of those transfers under the UVTA, California Civil Code ("CCC") sections 3439 to 3439.14, and other remedies.

**D.  The first round of summary judgment motions**

On cross-motions for summary judgment, the bankruptcy court held that "the Transmutation Agreement was a transfer for the purposes of the UVTA. . . . The UVTA only comes into play when a property owner acts to remove property from the reach of creditors. It is very clear that the Transmutation Agreement did just that with respect to [Mr. Sarkisian] and his creditors." The court denied summary judgment in all other respects.

**E.  The Sarkisians' second motion for summary judgment**

Shortly after discovery closed, the Sarkisians filed another motion for summary judgment (the "Motion"), arguing that the Trustee could not establish that the Transmutation Agreement caused actual injury.

Citing a California model jury instruction, the Sarkisians argued that CCC section 3439.04(a)(1) requires a showing of "actual injury." They relied on *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001), in which the California Court of Appeal stated that "[m]ere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential." They asserted that the Trustee must prove that Mr. Sarkisian was rendered insolvent by the transfer or

5

that the transfer put a specific asset beyond the reach of the Trustee that would have been available to pay the State Court Judgment.

In response, the Trustee argued that he had demonstrated that the estate had been harmed. He contended that the Sarkisians' "litigation shenanigans" and "proficiency in obstruction" had "made the collection of this fully liquidated fraud judgment extremely difficult." He argued that *Mehrtash* was distinguishable and that the real property at issue there was over-encumbered and had no value as an asset. In contrast, Mr. Sarkisian's assets listed in the Transmutation Agreement totaled at least $3.8 million.

The bankruptcy court issued a tentative ruling and stated that it was inclined to grant the Motion because "[t]he Trustee has identified no evidence that this bankruptcy estate suffered any injury by virtue of the transmutation." The court cited *Mehrtash* and its progeny for the proposition that "injury to the creditor must be shown affirmatively." It was concerned with the Trustee's failure to offer any evidence of injury, such as the lack of enough funds to satisfy Mr. Sarkisian's obligations post-transfer.

At the hearing on the Motion, the court acknowledged that the Transmutation Agreement put certain assets out of reach of the bankruptcy estate but found that there was "cushion" to satisfy the State Court Judgment. Thus, it concluded that there was no injury because the transfer did not make collection more difficult or render Mr. Sarkisian unable to

pay his debts.

The bankruptcy court granted the Motion in its entirety as to all claims. It incorporated its tentative ruling into its order and held that "one of the elements of a UVTA claim is that Plaintiff must have suffered actual damages as result of the alleged voidable transaction . . . . [B]ecause Plaintiff failed to set forth any evidence of damages, the Court finds that there is no genuine dispute as to the essential element of damages . . . ."

The Trustee timely appealed.[3]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(H). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting the Sarkisians summary judgment.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant or deny summary judgment. *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090 (9th Cir. 2009). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations

---

[3] The Sarkisians did not cross-appeal from the order determining that the Transmutation Agreement amounted to a "transfer" for purposes of the UVTA.

omitted).

## DISCUSSION

### A. Only "material" facts are properly considered in summary judgment proceedings.

Summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056). An issue is "material" if it might legally affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

A nonmoving party who bears the burden of proof at trial must make a "sufficient showing" that he can establish an element of his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). But this only applies if the fact is "material," i.e., if it relates to an element of the nonmoving party's prima facie case.

Thus, to determine what facts were material, we must identify the elements of the Trustee's case under the UVTA.

### B. The bankruptcy court erred in requiring the Trustee to prove "actual harm" or "actual damages" under the UVTA.

Under the UVTA, "actual damages" or the insufficiency of the debtor's remaining assets is not an element of an actual intentional

8

fraudulent transfer claim. Requiring the Trustee to provide evidence of a fact that is not material was error.

### 1.  Actual damages or harm is not an element of an "actual" fraudulent transfer claim under the UVTA.

To construe the UVTA,[4] we begin (as we must) with the statute's language. *See Poole v. Orange Cty. Fire Auth.*, 61 Cal. 4th 1378, 1384 (2015) (When interpreting a statute, "[w]e begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." (citation omitted)).

CCC section 3439.04(a)(1) provides that creditors may avoid what are often called "actual" fraudulent transfers:

---

[4] The UVTA is a relatively new statute with ancient roots. The UVTA, adopted in California in 2015 and effective January 1, 2016, is a renamed and slightly revised version of the Uniform Fraudulent Transfers Act ("UFTA"), which California enacted in 1986. The UFTA replaced the Uniform Fraudulent Conveyances Act ("UFCA"), which was adopted in California in 1939. The provisions of UVTA, UFTA, and UFCA that are relevant to this appeal are identical in substance. Further, the UFCA is not the beginning of the story: it "was a codification of the 'better' decisions applying the Statute of 13 Elizabeth." Prefatory Note (1984), Unif. Voidable Transactions Act, https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=1a5715f1-679d-1a43-e82c-c2aaa2238f86&forceDialog=0. That statute was adopted in England in 1571 and became the law of every American jurisdiction. In other words, the law governing this case is at least 450 years old. *See Twyne's Case* (Star Chamber 1601) 76 Eng. Rep. 809, 3 Coke 80b.

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

CCC section 3439.04(a)(1). The UVTA defines the key term "transfer" as follows:

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance.

CCC section 3439.01(m). The term "asset" is defined in a specific way that differs from its common meaning:

> "Asset" means property of a debtor, but the term does not include the following:
>
> > (1) Property to the extent it is encumbered by a valid lien.
> >
> > (2) Property to the extent it is generally exempt under nonbankruptcy law.
> >
> > (3) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

CCC section 3439.01(a).

In short, under the plain language of the statute, the Trustee had to

10

prove only three things: that the Transmutation Agreement operated as a (1) "transfer" of an (2) "asset" and was (3) "made . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." No statutory language supports a requirement that the plaintiff prove damages or actual injury[5] or that the debtor's remaining assets after the transfer were insufficient to satisfy the debt without undue burden.

It is significant that, when the legislature wanted to require a showing that the debtor had insufficient assets, it did so unambiguously. CCC section 3439.04(a)(2) permits the avoidance of "constructive" fraudulent transfers (i.e., transfers that are voidable without proof of actual intent to hinder, delay, or defraud):

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

---

[5] The Sarkisians argue that the plain language of CCC section 3439.04(a)(1) only provides that a transfer is "voidable" (as opposed to "void") and that the use of the discretionary term means that the Trustee must still establish actual damages before the transfer can be set aside. We reject this argument. By referring to a "voidable" transfer in the UFTA, "the legislature intended it to be a limited exception to the general rule that, by nature, fraudulent transfers are void *ab initio,* in order to restrict the ability of a creditor in an avoidance action to set aside a fraudulent transfer to a good faith purchaser for reasonably equivalent value." *Daff v. Wallace (In re Cass)*, 476 B.R. 602, 617 (Bankr. C.D. Cal. 2012), *aff'd*, 2013 WL 1459272 (9th Cir. BAP Apr. 11, 2013), *aff'd*, 606 F. App'x 318 (9th Cir. 2015). There is no reason to think that, when it used the term "voidable," the legislature intended to give courts discretion or impose an unwritten "actual damages" element.

. . .

> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

>> (A) Was engaged or was about to engage in a business or a transaction for which **the remaining assets of the debtor were unreasonably small** in relation to the business or transaction.

>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, **debts beyond the debtor's ability to pay** as they became due.

(Emphases added.)

Similarly, CCC section 3439.05(a) permits the avoidance of another kind of "constructive" fraudulent transfer. It expressly requires the creditor to prove the debtor's financial condition at the time of or after the transaction:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was **insolvent**[6] at that time or the debtor became insolvent as a result of the transfer or obligation.

(Emphasis added.)

---

[6] "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets. . . . A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent." CCC section 3439.02(a), (b).

The legislature explicitly provided that "constructive" fraudulent transfers are not avoidable unless the creditor proves that (put simply) the debtor's financial condition was bad at the time of the transfer or was made worse by the transfer. The legislature made no such provision with respect to actual fraudulent transfers. We must assume that this omission was deliberate and meaningful. *See Azusa Land Partners v. Dep't of Indus. Relations*, 191 Cal. App. 4th 1, 20 (2010) ("[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." (citation and internal quotation marks omitted)).[7]

---

[7] Section 3439.08(a) reinforces this conclusion by showing that the legislature knew how to impose a financial condition requirement in a sophisticated way. It provides that:

> A transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee.

In other words, if the debtor made an actual fraudulent transfer, but the transferee acted in good faith **and** paid "reasonably equivalent value" for the transferred asset, the transfer is not avoidable. At first blush, this appears to be an "actual injury" requirement: if the debtor received "reasonably equivalent value" in exchange for the transfer, the transfer did not harm the debtor's financial condition. But it is not only an "actual injury" requirement: even if the transferee paid full value for the asset, such that the transfer had no net negative effect on the transferor's financial condition, the transferee still has to give up the transferred asset if the transferee did not act in "good faith." Further, section 3439.08(a) is an affirmative defense, not an element of the creditor's case: the transferee has the burden of proof under that section. CCC section 3439.08(f). Imposing an extratextual blanket "actual damages" requirement would disrupt the careful balance that the legislature struck in this section.

This is not to say, however, that the transferor's insolvency is completely irrelevant to an "actual" fraudulent transfer claim. The creditor must establish that the transfer was made with "actual intent to hinder, delay or defraud" creditors. Because transferors rarely admit that they acted with bad intent, the UVTA and its ancestors permit the creditor to prove intent using circumstantial evidence, and they provide a nonexclusive list of circumstances relevant to the intent determination. These include the value of the property transferred and "[w]hether the debtor was insolvent or became insolvent shortly after the transfer was made." CCC section 3439.04(b)(5), (8), (9).[8]

In short, the statutory text does not make damages or "actual injury" an element of an "actual" fraudulent transfer claim that a creditor such as the Trustee must prove.

2.     **California case law does not support an extratextual "actual damages" requirement in actual fraudulent transfer cases.**

California courts have held, under the UVTA's statutory ancestors,

---

[8] Further, the creditor must prove that there was a "transfer." This requires proof that the transferred property was an "asset" within the statutory definition, meaning that the property was not overencumbered or exempt. In this case, however, the bankruptcy court has already determined that the Transmutation Agreement operated as a "transfer" under the UVTA, and the Sarkisians did not cross-appeal.

Finally, if a court were convinced that the avoidance action was unnecessary and was brought to harass the debtor or for another improper purpose, the court could impose sanctions under Rule 9011 and similar provisions. *See In re Brooks-Hamilton*, 400 B.R. 238, 249 (9th Cir. BAP 2009).

that actual harm is not an element of an actual fraudulent transfer claim. For example, in *Fross v. Wotton*, 3 Cal. 2d 384 (1935), the bankruptcy trustee alleged "an actual intent on the part of [transferor] to hinder, delay, and defraud his creditors by means of the conveyances attacked." *Id.* at 386. The California Supreme Court rejected the argument that the transfer was not fraudulent because the debtor could satisfy the debt: "We do not regard the failure of appellant to show that the security was insufficient to satisfy the debt at the time of the conveyances as fatal to his case . . . ." *Id.* at 387. Rather, it held that:

> We understand the true rule to be that amply secured debts are not to be taken into consideration for the purpose of determining whether the financial condition of the grantor renders the conveyance presumptively fraudulent as to existing creditors, but that **when actual fraud is charged the sufficiency of the security at the time of the conveyance is important only as evidencing the existence or nonexistence of a fraudulent intent.** This is in accordance with the long-established rule in this state that **where there is actual fraud it is immaterial that the debtor does not entirely strip himself of his assets and there is other property from which the creditor may be satisfied.**

*Id.* at 388 (emphases added); *see, e.g.*, *Johns v. Baender*, 40 Cal. App. 790, 792 (1919) ("[I]f a conveyance be made with the intent to defraud creditors it is void, notwithstanding that the debtor has other property ample in amount

15

to satisfy his creditor.")[9]

*Fross* remains good law. *See, e.g.*, *Reddy v. Gonzalez*, 8 Cal. App. 4th 118, 123 (1992) ("If there is actual fraud a creditor can maintain an action to set aside the transfer without a showing that the defendant has no other assets to satisfy his judgment." (citation omitted)); *Cooper v. Cooper*, 168 Cal. App. 2d 326, 335 (1959) ("The court found that [transferor] was solvent at the time the property was purchased. The fact that [transferor] was not rendered insolvent by the purchase is immaterial if the intent of the debtor to hinder, delay, or defraud fraud a creditor is shown."); *Freeman v. La Morte*, 148 Cal. App. 2d 670, 675 (1957) ("Furthermore the transfer could be set aside if there was an actual intent to defraud although [transferor] was not rendered insolvent."); *Maguire v. Corbett*, 119 Cal. App. 2d 244, 251 (1953) ("[I]t is settled that if the intent of the debtor to hinder or delay creditors is shown, it is not necessary to prove that the debtor was insolvent at the time.")[10]

---

[9] *Fross* and *Johns* predate California's adoption of the UFCA in 1939. Prior to the UFCA, CCC section 3439 (enacted 1872) provided that "[e]very transfer of property . . . with intent to defray or defraud any creditor or other person of his demands, is void against all creditors of the debtor . . . ." There is no substantive difference between this language and the words of CCC section 3439.04(a)(1).

[10] These cases were decided under the UFCA and UFTA, which were substantially identical to CCC section 3439.04(a)(1) of the UVTA. Section 7 of the UFCA provided that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed by law, to hinder, delay, or defraud

(continued...)

16

Federal courts applying California law have reached the same result. *See Palmdale 3D, LLC v. Calamos*, No. CV-14-7523-MWF (PLAx), 2015 WL 71561, at *5 (C.D. Cal. Jan. 5, 2015) ("The debtor's intent is the crucial aspect of a fraudulent conveyance claim." (citation omitted)); *In re Liquimatic Sys., Inc.*, 194 F. Supp. 625, 628 (S.D. Cal. 1961) ("[A] transfer made with actual intent to defraud creditors is fraudulent as to any creditor, regardless of whether the debtor-transferor was insolvent at the time of the transfer." (citations omitted)); *see also First Presbyterian Church of Santa Barbara v. Rabbitt*, 118 F.2d 732, 735 (9th Cir. 1940) (construing California law and stating that, "if the deed was made with intent, on the part of both [transferor] and appellant, to defraud [transferor's] creditors, it was void against them and against appellee, regardless of whether there was or was not a valuable consideration, and regardless of [transferor's] solvency or insolvency").[11]

---

[10](...continued)
either present or future creditors, is fraudulent as to both present and future creditors." Section 4 of the UFTA is nearly verbatim to the UVTA.

[11] Courts construing the nearly identical language of § 548(a)(1) of the Bankruptcy Code reach the same conclusion. *See Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355 n.6 (8th Cir. 1995) ("The [transferees] also argue that the transfers cannot be avoided as fraudulent because no creditor was harmed. However, the bankruptcy court correctly noted that under § 548(a)(1), actual harm is not required; the trustee must show only that the debtor acted with the intent to hinder, delay or defraud creditors.").

**3. The authorities cited by the Sarkisians are unpersuasive.**

The authorities cited by the Sarkisians do not convince us that damages or actual harm is an element of an actual fraudulent transfer claim.

**a. *Mehrtash***

The Sarkisians rely on *Mehrtash*, where a creditor sought to avoid as fraudulent her former husband's transfer of a house to his adult stepsons. The former husband purchased the house for no more than $551,000 and quitclaimed the house to the stepsons a few months later. At that time, the property was subject to liens amounting to about $610,000 and a $125,000 homestead exemption. The Court of Appeal affirmed the superior court's holding that she had failed to allege any injury from the fraudulent transfer, framing the rule as follows:

> A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. **It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt.**

93 Cal. App. 4th at 80 (citations omitted) (emphasis added). The court held that she was not injured by the transfer because she would not receive anything even if it undid the fraudulent transfer: she failed to offer "evidence that the value of the property could support any net recovery for

18

her in the event the conveyance were set aside. The trial court was authorized to consider this a failure by plaintiff to prove an essential element of her case (that the allegedly fraudulent conveyance injured her) . . . ." *Id.* at 81.

Contrary to the Sarkisians' argument, *Mehrtash* does not stand for the proposition that the UVTA includes a free-floating "actual injury" element. To make this argument, one has to read only the first three sentences of the paragraph quoted above and ignore the fourth sentence. Under *Mehrtash*, all that the plaintiff must prove is that the transfer put beyond the creditor's reach property that the creditor could otherwise have seized.[12]

This result is perfectly consistent with the plain language of the UVTA. As we have explained, property is not treated as an "asset" for purposes of the UVTA "to the extent it is encumbered by a valid lien [or] generally exempt under nonbankruptcy law." In *Mehrtash*, because the amount of the liens on the house and the homestead exemption exceeded the property's value, the house was not an "asset" that could be the subject

---

[12] The cases on which the *Mehrtash* court relied support this reading. In *Bennett v. Paulson*, 7 Cal. App. 2d 120 (1935), a creditor challenged as fraudulent the debtor's transfer of a partnership interest. The trial court found that the liabilities of the partnership exceeded its assets, so the partnership interest had no value. The court of appeals held that, "[t]here being sufficient evidence to sustain the . . . findings, [the creditor] was not entitled to have said transfer set aside." *Id.* at 122. *Haskins v. Certified Escrow & Mortgage Co.*, 96 Cal. App. 2d 688, 692 (Cal. App. 1950), holds that the transfer of a right of redemption cannot be a fraudulent transfer because the creditors could not reach that right by legal means.

of a fraudulent transfer under the UVTA.

The holding of *Mehrtash* does not support the Sarkisians' argument or the bankruptcy court's analysis in this case. The *Mehrtash* court was concerned with whether the creditor could have made any recovery from the asset that **was** transferred; in other words, whether the transferred asset had any net value to the creditor. In contrast, the Sarkisians and the bankruptcy court focused on whether the creditor could still recover, without undue difficulty, from the assets that were **not** transferred. *Mehrtash* does not support that broader requirement.

### b.    *Schroeder*

The Sarkisians similarly rely on *Fidelity National Title Insurance Co. v. Schroeder*, 179 Cal. App. 4th 834 (2009), which also concerns an allegedly fraudulent transfer involving an asset with no equity. The Court of Appeal said that "*Mehrtash* rightly affirmed the longstanding principle that injury-in-fact is an essential element of a claim under the UFTA, and we follow that principle in the present case. A creditor has not been injured unless the transfer puts beyond reach property the creditor **could subject to payment of his or her debt**." *Id.* at 845 (citations omitted). But the court also noted that "the injury requirement is built into the express terms of the UFTA," based on the statutory definition of "asset" cited above. *Id.* at 845-46.

In order for a fraudulent transfer to occur, among other things, there must be a **transfer** of an **asset** as defined in the UFTA. In the definitional section of the UFTA, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." "Asset" means "property of a debtor, but the term does not include, the following: [¶] (1) Property to the extent it is encumbered by a valid lien. [¶] (2) Property to the extent it is generally exempt under nonbankruptcy law."

The above definitions are relevant to the question of whether any injury occurred to the creditor as a result of the transfer, which is a necessary element for relief under the UFTA.

*Id.* at 841 (citations omitted). Therefore, because the transferred property was subject to both a prior encumbrance and a homestead exemption, there was no equity available for the creditor, it was not injured by the transfer, and the property was not an "asset" under the statute. *Schroeder* does not support a broader requirement of "actual damages."

### c. The model jury instruction

The Sarkisians cite model civil jury instructions issued by the Judicial Council of California that purport to lay out the elements of an actual fraudulent transfer claim under CCC section 3439.04(a)(1). Once again, the Sarkisians' argument relies on a selective quotation of the model instruction. In full, it reads:

21

**[Name of plaintiff] claims [he/she/it] was harmed because [name of debtor] [transferred property/incurred an obligation] to [name of defendant] in order to avoid paying a debt to [name of plaintiff].** [This is called "actual fraud."] To establish this claim against [name of defendant], [name of plaintiff] must prove all of the following:

1. That [name of plaintiff] has a right to payment from [name of debtor] for [insert amount of claim];

2. That [name of debtor] [transferred property/incurred an obligation] to [name of defendant];

3. That [name of debtor] [transferred the property/incurred the obligation] with the intent to hinder, delay, or defraud one or more of [his/her/its] creditors;

4. That [name of plaintiff] was harmed; and

5. That [name of debtor]'s conduct was a substantial factor in causing [name of plaintiff]'s harm.

**To prove intent to hinder, delay, or defraud creditors, it is not necessary to show that [name of debtor] had a desire to harm [his/her/its] creditors. [Name of plaintiff] need only show that [name of debtor] intended to remove or conceal assets to make it more difficult for [his/her/its] creditors to collect payment.**

Judicial Council of California Advisory Committee on Civil Jury Instructions ("CACI") 4200 (emphases added).

This jury instruction is not a model of clarity, but read in its entirety, it is consistent with our analysis of *Mehrtash*. Under *Mehrtash*, injury or harm is shown by a transfer that put beyond the creditor's reach assets that

22

were otherwise available to the creditor. The jury instruction says that "harm" is an element of the claim, but the first and last sentence show that the "harm" to which the instruction refers is simply removing or concealing assets from creditors. That is all that is required under the UVTA.

And, in any event, model jury instructions are not binding or unassailable statements of the law. *See Clem v. Lomeli*, 566 F.3d 1177, 1181 n.2 (9th Cir. 2009) ("The use of a model jury instruction does not preclude a finding of error." (citation omitted)); Cal. R. of Court 2.1050(b) ("The Judicial Council endorses these instructions for use and makes every effort to ensure that they accurately state existing law. The articulation and interpretation of California law, however, remains within the purview of the Legislature and the courts of review."). If one reads CACI 4200 carefully, it is consistent with the statutory elements of an actual fraudulent transfer claim under the UVTA. If one reads it as the Sarkisians urge, it is incorrect and invalid.

#### d.   *Berger*

*Berger v. Varum*, 35 Cal. App. 5th 1013 (2019), has nothing to do with the issues in this case. In *Berger*, the plaintiff obtained a $2.7 million judgment and filed a complaint alleging that the defendants had made fraudulent transfers. The defendants eventually paid the judgment. The plaintiff amended his complaint to acknowledge satisfaction of the

judgment and added claims for money damages caused by the defendants' prior efforts to frustrate collection of the judgment. The trial court ruled that a judgment creditor has no claim for consequential or punitive damages resulting from the defendants' delay in paying the judgment. *Id.* at 1017-18.

The Court of Appeal reversed, holding that a creditor who is the victim of a fraudulent transfer may recover a monetary award for consequential damages caused by a fraudulent transfer, as well as punitive damages. The court went on to hold that the creditor had adequately alleged the types of damages which the creditor sought to recover.

*Berger* stands for the obvious proposition that a party who seeks an award of money damages must plead and prove its damages. *Berger* does not state or imply, however, that a creditor seeking to avoid an actual fraudulent transfer must prove that it suffered actual injury (apart from the fact that the debtor transferred an "asset" as defined).

### e.    *Avila* and *Colby*

The Sarkisians cite two federal district court cases that quote and rely on *Mehrtash's* actual injury requirement. In *Avila v. Bank of America*, Case No. 17-CV-00222-HSG, 2017 WL 4168534 (N.D. Cal. Sept. 20, 2017), the plaintiff brought claims for fraudulent transfer against mortgagees and their servicers who allegedly transferred their interests in the subject property in violation of the UVTA and refused to accept his loan payments.

The district court granted the mortgagees' motion to dismiss, holding that the plaintiff failed to show that he had been injured by the fraudulent conveyance because he did not "establish an essential element of his claim—that the allegedly fraudulent conveyance injured him. . . ." *Id.* at *3.

Similarly, in *Colby v. Newman*, Case No. CV 11-07413, 2013 WL 12125529 (C.D. Cal. Aug. 29, 2013), the district court, relying on *Mehrtash*, dismissed the plaintiffs' actual fraudulent transfer claim because "Plaintiffs fail to allege an injury" where they alleged that they "have suffered and continue to suffer damages in an amount to be determined at trial." *Id.* at *7. It noted that the plaintiffs failed "to allege that they were in fact prevented from collecting the property to enforce the [asset purchase agreement] or any future judgment in this action." *Id.*

These decisions are unpublished and not binding on us. We respectfully believe that they rest on the same incomplete quote from *Mehrtash* that the Sarkisians advocate and that they cannot be reconciled with the complete text or holding of *Mehrtash*, the language of the statute, or the overwhelming weight of California appellate authority.

### 4. The Trustee has standing.

The Sarkisians argue that the Trustee needed to articulate an actual injury in order to have standing to sue under the UVTA. Standing requires that the plaintiff allege some legally protected right that is or will be injured by the defendant. "[W]hether one has standing in a particular case

25

generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened." *Clifford S. v. Super. Ct.*, 38 Cal. App. 4th 747, 751 (1995).

The UVTA provides that a transfer "is voidable as to a **creditor**[,]" CCC section 3439.04(a) (emphasis added), which is simply defined as "a person that has a claim[,]" CCC section 3439.01(c). The Trustee was such a person. To establish standing, he only needed to articulate that he had rights that could suffer a cognizable injury, that is, that he was entitled to collect on the State Court Judgment and that Mr. Sarkisian fraudulently transferred property with the intent of hindering, delaying, or defrauding the estate.

## CONCLUSION

The bankruptcy court erred in granting the Sarkisians summary judgment. We REVERSE the summary judgment and REMAND the matter to the bankruptcy court for further litigation.